ADRIAN DePASQUALE v. AODGHAN O'RAHILLY

No. 9020SC521

(Filed 19 March 1991)

**1. Conversion § 10 (NCI4th)— stock—repurchase agreement—no showing of right to possession—directed verdict for defendant**

The trial court properly granted defendant's directed verdict motion in an action for conversion of stock where plaintiff had conveyed shares of stock in a farm to defendant with plaintiff holding an option to repurchase within one year; both parties entered into separate agreements with a third party under which the stock was conveyed to the third party; both agreements were subject to a pledge and escrow agreement under which the stock would be released to plaintiff if the balance due defendant was not paid by 8 July 1985; and plaintiff learned after the deadline that the third party and defendant had agreed, among other things, to extend the deadline for payment. Construed as a whole, it is clear that the parties' intent was that the parties would have the rights provided by the UCC if the third party failed to make timely payment to defendant. Upon the third party's failure to pay defendant by the deadline, the stock would be delivered to the sellers for its disposition by their escrow agents, and plaintiff has shown no ownership rights in the stock entitling him to possession.

**Am Jur 2d, Conversion §§ 75, 76.**

**2. Rules of Civil Procedure § 11 (NCI3d)— Rule 11 sanctions denied—no error**

The trial court did not err in an action for conversion of stock by denying defendant's motion for attorney fees under N.C.G.S. § 1A-1, Rule 11 where review of the complaint in conjunction with the answer, counterclaim and reply reveals a complaint presenting facially plausible claims. An award of sanctions under Rule 11 on the ground that a pleading is not warranted by existing law requires a two part analysis. The court must determine whether the pleading is facially plausible when read in conjunction with the responsive pleadings and, if not, whether the complaint was warranted by the existing

DEPASQUALE v. O'RAHILLY

[102 N.C. App. 240 (1991)]

law to the best of the signer's knowledge, information and belief formed after reasonable inquiry.

**Am Jur 2d, Conversion § 120; Damages §§ 615, 616.**

3. **Costs § 36 (NCI4th) — action for conversion of stock — attorney fees denied — no error**

The trial court did not err in an action for conversion of stock by denying defendant's motion for attorney fees under N.C.G.S. § 6-21.5 where plaintiff's pleadings, viewed in conjunction with defendant's responsive pleadings, facially presented a justiciable issue of law.

**Am Jur 2d, Conversion § 120; Damages §§ 615, 616.**

APPEAL by plaintiff from order filed 2 January 1990 and by defendant from order filed 9 January 1990 in MOORE County Superior Court by *Judge F. Fetzer Mills*. Heard in the Court of Appeals 12 December 1990.

*William V. McPherson, Jr., and Michaels & Jones Law Offices, by E. Spencer Parris, for plaintiff-appellant/appellee.*

*Hendrick, Zotian, Cocklereece & Robinson, by William A. Blancato, for defendant-appellant/appellee.*

GREENE, Judge.

The plaintiff appeals the trial court's judgment filed 2 January 1990 allowing the defendant's motion for directed verdict. The defendant appeals the trial court's order filed 9 January 1990 denying the defendant's motion for attorney fees made pursuant to N.C.G.S. § 1A-1, Rule 11 (Rule 11) and N.C.G.S. § 6-21.5 (1986).

Viewed in the light most favorable to the plaintiff, the evidence shows the following: Prior to 31 May 1982, the plaintiff owned all 1000 shares of the stock of Little River Farms, Inc. [Farms]. In May, 1982, financial difficulties prompted the plaintiff to convey 510 shares of stock to the defendant and to place the other 490 shares in voting escrow with an employee of the defendant. In consideration of this conveyance, the defendant agreed to cure Farms' loan defaults at a cost of $120,000. The parties' agreement gave the plaintiff the option of repurchasing the 510 shares of stock from the defendant within a twelve month period.

DEPASQUALE v. O'RAHILLY

[102 N.C. App. 240 (1991)]

During the next twelve months, the plaintiff found a third party who was interested in buying all of the stock of Farms. On 8 July 1983, both the plaintiff and the defendant entered into separate agreements with the third party. The defendant conveyed his 510 shares to the third party for $500,000 to be paid on or before 8 July 1985. Under the plaintiff's agreement with the third party, the plaintiff and his nephew conveyed the other 490 shares of stock to the third party, of which amount 400 were the plaintiff's, in exchange for allowing the plaintiff's mother to reside in the main residence without paying rent for the rest of her life or until the land on which the residence is located is sold, at which time she would receive $125,000 of the sale proceeds. Additionally, the third party agreed to employ the plaintiff for two years at the rate of $20,000 for the first year, and $30,000 for the second. Furthermore, the agreement provided that if the farm was repurchased from a proposed syndication, the plaintiff and his nephew would own an undivided one-half interest in the 130 acres comprising the race track, barns, and other outbuildings. Alternatively, if the farm or any part of it was sold, the third party would pay the plaintiff and his nephew a pro rata portion of the profits of the sale after certain expenses had been paid.

Both the defendant's and the plaintiff's separate agreements with the third party were made subject to a pledge and escrow agreement [Agreement] which was also entered into by the parties on 8 July 1983. Under this Agreement, the third party pledged the stock to secure payment of the obligation owed to the defendant. The Agreement provided that "[t]he pledge shall be for the benefit of the Sellers, and the Escrow Agents shall hold the Pledged Stock for the benefit of Sellers to the extent of the outstanding principal balance then due to Mr. Aodghan O'Rahilly." The Agreement also provided the following:

4. *Release of Stock.*

. . . .

(B) The Pledged Stock shall be released from the Pledge and delivered to Sellers on July 8, 1985 if Buyer has not paid the balance due Aodghan O'Rahilly under paragraph 3 of the Stock Purchase Agreement or July 8, 1985 whichever is earlier or upon the happening of one or more of the stated conditions described in paragraph 4 of the Addendum. . . .

5. *Remedies of Sellers.* Upon the default by Buyers under these terms, Sellers shall have all of the rights given to secured parties upon default by the Uniform Commercial Code of the State of North Carolina. The Escrow Agents shall have the sole right and power to exercise all rights of the Sellers as secured parties and shall do so for the benefit of the Sellers, to the extent of the outstanding principal balance then due Mr. O'Rahilly at the time of the exercise of such rights.

After the 8 July 1985 deadline, the plaintiff learned that the third party had not paid the defendant the entire amount owed to him. Rather, the third party and the defendant had entered into another agreement on the matter of payment which, among other things, extended the date for payment. On the basis of the fourth paragraph of the Agreement, the plaintiff believed that he was entitled to a return of his stock because the third party did not pay the defendant the entire debt owed to him by the original 8 July 1985 deadline. Therefore, the plaintiff sued the defendant for the conversion of his 400 shares of stock and for cutting off his alleged right to redeem the 510 shares of stock sold to the defendant in 1982. The defendant made a motion for summary judgment which the trial court denied. At trial, at the end of the plaintiff's evidence, the defendant moved for and the trial court granted a directed verdict for defendant pursuant to N.C.G.S. § 1A-1, Rule 50. After the trial court allowed the defendant's motion, the defendant moved for attorney fees against the plaintiff's attorneys pursuant to Rule 11 and for attorney fees generally pursuant to N.C.G.S. § 6-21.5, which motions the trial court denied.

---

The issues are (I) whether the evidence viewed in the light most favorable to the plaintiff allows but one reasonable inference, that the plaintiff was not entitled under the Agreement to the return of his stock upon the third party's failure to pay the defendant in full by 8 July 1985; and (II) whether the trial court erred in refusing to award the defendant attorney fees pursuant to (A) Rule 11, or (B) N.C.G.S. § 6-21.5.

I

[1]                    Plaintiff's Appeal

The purpose of a motion for directed verdict is to test the legal sufficiency of the evidence for submission to the

jury and to support a verdict for the non-moving party. . . . In deciding the motion, the trial court must treat non-movant's evidence as true, considering the evidence in the light most favorable to non-movant, and resolving all inconsistencies, contradictions and conflicts for non-movant, giving non-movant the benefit of all reasonable inferences drawn from the evidence. . . . Non-movant's evidence which raises a mere possibility or conjecture cannot defeat a motion for directed verdict. . . . If, however, non-movant shows more than a scintilla of evidence, the court must deny the motion.

*McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. rev. denied*, 327 N.C. 140, 394 S.E.2d 177 (1990) (citations omitted).

"[A] contract must be construed as a whole, considering each clause and word with reference to all other provisions and giving effect to each whenever possible." *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 504, 320 S.E.2d 892, 897 (1984), *disc. rev. denied*, 312 N.C. 797, 325 S.E.2d 631 (1985). Where a contract is clear and unambiguous, "its construction is a matter of law for the court." *Id.* at 503, 320 S.E.2d at 896. With such a contract, "the court may not ignore or delete any of its provisions." *Lineberry v. Lineberry*, 59 N.C. App. 204, 206, 296 S.E.2d 332, 333 (1982). Furthermore, "the court is obligated to interpret the contract as written, and the court cannot look beyond the terms to see what the intentions of the parties might have been in making the agreement." *Renfro v. Meacham*, 50 N.C. App. 491, 496, 274 S.E.2d 377, 379 (1981).

The plaintiff argues that paragraph 4(B) of the Agreement provides that the plaintiff is entitled to a return of his stock upon the third party's failure to pay the defendant by 8 July 1985, that the third party failed to pay the defendant by 8 July 1985, and that the defendant's agreement with the third party extending the payment deadline amounts to conversion by the defendant of the plaintiff's right to receive the stock. If paragraph 4(B) were not followed by paragraph 5, the plaintiff's argument would possibly have merit. However, as contracts are construed as a whole, paragraph 4(B) must be viewed in light of paragraph 5. When this is done, the parties' intent from the contract becomes clear: If the third party failed to make timely payment to the defendant, the sellers would have all rights regarding the stock as provided

by the Uniform Commercial Code in North Carolina, Chapter 25 of the General Statutes [UCC], and their escrow agents would have the duty and the sole right to exercise the sellers' rights. Upon the third party's failure to pay the $500,000 to the defendant by 8 July 1985, the stock would be delivered to the sellers for its disposition by their escrow agents according to the UCC. Thus, even assuming the third party failed to pay the $500,000 to the defendant by 8 July 1985, and that the defendant's and third party's agreement concerning payment was ineffective, which issue we do not now decide, the plaintiff was not entitled to the stock as it would have been disposed of by the escrow agents according to the UCC. Accordingly, the plaintiff has shown no ownership rights in the stock entitling him to have its possession, and the trial court properly granted the defendant's directed verdict motion as the plaintiff has no claim for conversion. *See Gadson v. Toney,* 69 N.C. App. 244, 246, 316 S.E.2d 320, 321-22 (1984) (plaintiff must prove his ownership in property for conversion action to exist).

## II

## Defendant's Appeal

## (A) Rule 11

[2] The defendant argues that because the plaintiff's pleadings were not warranted by the existing law, the trial court erred in denying his Rule 11 motion for attorney fees against the plaintiff's attorneys. We disagree. Prior to imposing sanctions against an attorney under Rule 11 on the ground that the non-movant's pleadings are not warranted by the existing law, the movant must show that the attorney's conduct in researching and filing the pleadings was not objectively reasonable. *See Turner v. Duke Univ.,* 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) (standard under Rule 11 is "one of objective reasonableness"); *Bryson v. Sullivan,* 102 N.C. App. 1, 401 S.E.2d 645 (1991) (burdens of persuasion and proof on movant). However, because inquiry into the attorney's conduct relating to these matters "threatens to encroach on the attorney-client relationship and into areas protected by the attorney-client privilege or opinion work product," such inquiry into the attorney's conduct is permitted only if the pleading in question is not facially plausible. G. Joseph, Sanctions: The Federal Law of Litigation Abuse § 17(B)(1), at 64 (1989 & Supp. 1990); *Bryson,* 102 N.C. App. at 12, 401 S.E.2d at 653. Therefore, an award of sanctions under Rule 11 on the ground that a pleading is not war-

ranted by existing law requires a two-part analysis. First, the court must determine whether the pleading, when read in conjunction with the responsive pleadings, is facially plausible. *Bryson*, 102 N.C. App. at 12, 401 S.E.2d at 653-54. If it is facially plausible, then the inquiry is complete, and sanctions are not proper. If the pleading is not facially plausible, then the second issue is whether to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, the complaint was warranted by the existing law. *Id.* at 13, 401 S.E.2d at 654; *see also* Rule 11. This second issue requires a determination of whether the attorney "undertook a reasonable inquiry into the law," and whether "based upon the results of the inquiry, . . . [the attorney] reasonably believed that . . . [the pleading] was 'warranted by existing law . . . .'" *Bryson*, 102 N.C. App. at 13-14, 401 S.E.2d at 654. If the court answers either prong of the second issue negatively, then Rule 11 sanctions are appropriate.

The plaintiff alleged that he was entitled to the stock on the grounds that the defendant converted it by conspiring with the third party. The defendant answered the complaint and filed a counterclaim in which he alleged that the plaintiff owed him $200,000 plus interest on an unpaid debt arising from a promissory note executed by the parties in 1979. The plaintiff filed a reply which raised a defense to the counterclaim that the sale by the defendant of the stock to the third party rendered the defendant's claim on the debt null and void because the defendant, having sold the stock, rendered his own performance under the 1979 note impossible because the plaintiff, once the stock had been sold, could no longer redeem the stock from the defendant according to an alleged right of redemption asserted in the plaintiff's amended complaint. Our review of the complaint in conjunction with the answer, counterclaim, and reply reveals a complaint presenting facially plausible claims. Therefore, no inquiry into the attorneys' conduct is required, and the defendant is not entitled to sanctions under Rule 11.

### (B) N.C.G.S. § 6-21.5

[3] The defendant essentially argues that because the plaintiff's complaint is based upon a "strained construction" of the Agreement, the pleadings do not present a justiciable issue of *law*, and therefore the defendant is entitled to attorney fees under N.C.G.S. § 6-21.5. We disagree. Again, as in Rule 11, the first issue is whether the pleading, when read in conjunction with all the responsive

CARTER v. CLOWERS

[102 N.C. App. 247 (1991)]

pleadings, facially presents a justiciable issue of law. *Bryson*, 102 N.C. App. at 16, 401 S.E.2d at 656. If not, the second issue is "whether the losing party should reasonably have been aware that the pleading he filed contained no justiciable" issue of law. *Id.* at 16-17, 401 S.E.2d at 656. Viewing the pleadings in conjunction with the defendant's responsive pleadings, we believe, as we do under our Rule 11 analysis, that the plaintiff's pleadings facially presented a justiciable issue of law. Accordingly, the trial court could not have taxed either the plaintiff or his attorneys with the defendant's attorney fees. *Id.* at 15-16, 401 S.E.2d at 655-56 (under N.C.G.S. § 6-21.5 attorney fees may be imposed on attorney, client, or both).

In summary, we affirm the trial court's grant of the defendant's motion for directed verdict and the trial court's denial of the defendant's motion for attorney fees pursuant to Rule 11 and N.C.G.S. § 6-21.5.

Affirmed.

Judges PARKER and COZORT concur.