NANCY S. MACK v. DONALD T. MOORE, M.D., DONALD T. MOORE, M.D., P.A., ARTHUR VERNON STRINGER, M.D.

No. 9114SC715

(Filed 21 July 1992)

1. **Appeal and Error § 130 (NCI4th)— sanctioning of attorney — immediate appeal by attorney**

An attorney may properly appeal the trial court's imposition of Rule 11 sanctions where the sanctions run only against the attorney. Furthermore, an order imposing sanctions on counsel is immediately appealable.

**Am Jur 2d, Trial §§ 118, 192 et seq.**

MACK v. MOORE

[107 N.C. App. 87 (1992)]

**2. Attorneys at Law § 63 (NCI4th) — charging lien — withdrawal prior to settlement or judgment**

No right to an attorney's charging lien exists when an attorney working pursuant to a contingent fee agreement withdraws prior to settlement or judgment being entered in the case.

**Am Jur 2d, Attorneys at Law §§ 324 et seq.**

**3. Rules of Civil Procedure § 11 (NCI3d) — improper notice of charging lien — sanctions against attorney — legal sufficiency prong of Rule 11**

The trial court properly imposed sanctions upon an attorney for a violation of the legal sufficiency prong of Rule 11 by filing notice of a charging lien after she had withdrawn from her former client's case and before a settlement or judgment was entered since no reasonable person in the attorney's position, after reading and studying the North Carolina law on the issue, would have believed that she had the right to file such a lien, and the attorney made no argument that her notice of lien was warranted by a good faith extension of existing North Carolina law.

**Am Jur 2d, Attorneys at Law §§ 324 et seq.; Trial § 118.**

**4. Rules of Civil Procedure § 11 (NCI3d) — notice of charging lien — improper purpose — sanctions against attorney**

A. strong inference of improper purpose, i.e., harassment of a former client and her present attorneys, was created by a former attorney's filing of a notice of a charging lien seeking recovery on the basis of quantum meruit plus a percentage of the judgment after she had withdrawn from the case out of anger because the client refused to accept a settlement offer. Therefore, the trial court properly imposed sanctions against the attorney for a violation of the improper purpose prong of Rule 11.

**Am Jur 2d, Attorneys at Law §§ 324 et seq.; Trial § 118.**

APPEAL by R. Marie Sides from order filed 24 April 1991 in DURHAM County Superior Court by *Judge Henry V. Barnette, Jr.* Heard in the Court of Appeals 13 May 1992.

*Robert R. Seidel and R. Marie Sides for R. Marie Sides, appellant.*

*Glenn E. Gray for plaintiff-appellee.*

GREENE, Judge.

Appellant appeals from an order filed 24 April 1991 striking appellant's notice of lien and sanctioning appellant pursuant to N.C.G.S. § 1A-1, Rule 11.

Appellant R. Marie Sides (Sides) is the former attorney of appellee Nancy Mack (Mack), the plaintiff in the underlying action. Sides entered into a contingent fee contract with Mack in January, 1987, pursuant to which Sides agreed to represent Mack in a medical malpractice action against the defendants named herein. In October, 1990, approximately four months prior to the trial date of the medical malpractice action, the attorney-client relationship between Sides and Mack began to deteriorate. According to Mack, Sides disagreed with Mack's decision to reject a $25,000 settlement offer from one of the defendants. Thereafter, Mack filed a grievance against Sides with the North Carolina State Bar alleging misconduct on the part of Sides. On 14 January 1991, the trial court granted Sides' motion to withdraw as Mack's counsel and continued the trial until July, 1991, in order to enable Mack to procure replacement counsel.

Mack hired replacement counsel to represent her in the medical malpractice action. Subsequently, Mack's new attorneys received a notice of lien from Sides in which Sides claimed a lien in the amount of "$75,550 as Quantum Meruit (hourly fee), plus a portion of the ultimate settlement or judgment to compensate her for taking the case on contingency . . . plus $143.74 as costs advanced in this case." On 7 March 1991, Mack filed a motion to strike the notice of lien and for sanctions pursuant to N.C.G.S. § 1A-1, Rule 11, alleging that the notice of lien filed by Sides had no legal foundation and was interposed to "harass the movant and prevent her from obtaining and retaining counsel to represent her in this action."

The trial court heard the motion on 18 April 1991. In addition to hearing oral argument from both Sides and Mack's attorneys, the trial court considered a memorandum of law presented by Mack's attorneys in support of Mack's motion for sanctions. The record indicates that Sides did not present any documents to the trial

MACK v. MOORE

[107 N.C. App. 87 (1992)]

court in opposition to the motion for sanctions, and, indeed, at oral argument before this Court it was apparent that Sides' sole argument before the trial court was that, contrary to Mack's contentions, existing law in North Carolina permitted Sides to properly file the notice of lien.

On 24 April 1991, the trial court filed an order striking Sides' notice of lien and sanctioning Sides in the amount of $2,125.00 (the amount expended by Mack's attorneys in opposing the notice of lien). In its order, the trial court found that no settlement or judgment had been entered into in the underlying action at the time that Sides filed her notice of lien, and that the excessive amount stated in Sides' notice of lien served to harass Mack and her attorneys and served to deter them from prosecuting Mack's claims. The court concluded that Sides' notice of lien violated both the legal sufficiency and improper purpose prongs of Rule 11. Sides appeals.

---

The issues presented are whether I) after making a reasonable inquiry into the existing law, an attorney's belief that she is entitled to assert an attorney's charging lien against a settlement or judgment in favor of a former client, despite the attorney's withdrawal from the case prior to settlement or entry of judgment, is reasonable; and II) a former attorney's filing of a notice of lien seeking recovery on the basis of both quantum meruit and a percentage of the judgment creates an inference of improper purpose under Rule 11.

[1]   We note at the outset that Sides herself may properly appeal the trial court's imposition of Rule 11. sanctions since "where an award of sanctions runs only against the attorney, the attorney is the party in interest and must appeal in his or her name." *DeLuca v. Long Island Lighting Co.*, 862 F.2d 427, 429 (2d Cir. 1988). Furthermore, "an order imposing sanctions on counsel, or any other non-party to the underlying action, may immediately be appealed as a final order." Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 17(F)(2) (1989 & Supp. 1992) (hereinafter *Joseph*).

I

Legal Sufficiency

Sides argues that the trial court erroneously concluded in its Rule 11 order that Sides is not permitted under the existing law

MACK v. MOORE

[107 N.C. App. 87 (1992)]

of North Carolina to recover fees through the use of an attorney's charging lien, and that therefore the court's order imposing sanctions against Sides based on her alleged violation of the legal sufficiency prong of the rule must be reversed. We disagree.

Under Rule 11, in addition to certifying that the pleading or paper is well grounded in fact and "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," the signer also certifies that the pleading or paper is "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." N.C.G.S. § 1A-1, Rule 11(a) (1990). In determining whether sanctions are warranted under the legal sufficiency prong of the rule, the court must first determine the facial plausibility of the paper. *Bryson v. Sullivan*, 330 N.C. 644, 661, 412 S.E.2d 327, 336 (1992). If the paper is facially plausible, then the inquiry is complete, and sanctions are not proper. If the paper is not facially plausible, then the second issue is (1) whether the alleged offender undertook a reasonable inquiry into the law, and (2) whether, based upon the results of the inquiry, formed a reasonable belief that the paper was warranted by existing law, judged as of the time the paper was signed. If the court answers either prong of this second issue negatively, then Rule 11 sanctions are appropriate. *Id.* at 661-62, 412 S.E.2d at 336; *dePasquale v. O'Rahilly*, 102 N.C. App. 240, 246, 401 S.E.2d 827, 830 (1991), *overruled on other grounds*, *Bryson v. Sullivan*, 330 N.C. 644, 412 S.E.2d 327 (1992).

[2] The well established law in North Carolina is that no right to an attorney's charging lien exists when an attorney working pursuant to a contingent fee agreement withdraws prior to settlement or judgment being entered in the case. *See Howell v. Howell*, 89 N.C. App. 115, 118, 365 S.E.2d 181, 183 (1988); *Clerk of Superior Court v. Guilford Builders Supply Co.*, 87 N.C. App. 386, 391, 361 S.E.2d 115, 118 (1987), *disc. rev. denied*, 321 N.C. 471, 364 S.E.2d 918 (1988); *Dillon v. Consolidated Delivery, Inc.*, 43 N.C. App. 395, 396, 258 S.E.2d 829, 830 (1979); *Covington v. Rhodes*, 38 N.C. App. 61, 67, 247 S.E.2d 305, 309 (1978), *disc. rev. denied*, 296 N.C. 410, 251 S.E.2d 468 (1979). This is so because

> [t]he charging lien is an equitable lien which gives an attorney the right to recover his fees 'from a fund recovered by his aid.' The charging lien attaches not to the cause of action, but to the judgment at the time it is rendered. At the time

> when [a former attorney's] purported charging lien . . . would
> . . . attach[ ], the time of judgment in favor of [the attorney's
> former client] . . . , the judgment [would not be] a fund recovered
> by the [attorney's] aid, as he [has withdrawn. The former at-
> torney is] entitled to no interest in the fund. [Citations omitted.]

*Howell*, 89 N.C. App. at 118, 365 S.E.2d at 183 (quoting *Covington*, 38 N.C. App. at 67, 247 S.E.2d at 309). Under existing law, the former attorney's sole remedy is to institute an action for quantum meruit recovery of fees against the former client. *See Covington*, 38 N.C. App. at 64, 247 S.E.2d at 308-09 (discharged attorney can recover only the reasonable value of his services as of that date).

[3] We must first resolve whether Sides' notice of lien is facially plausible. The record establishes and the trial court found that at the time Sides filed the notice, she had withdrawn from Mack's case and that such withdrawal was prior to settlement or entry of judgment in the case. In other words, the notice of lien was filed by an attorney who had no right under existing law to such a lien and therefore the paper lacks facial plausibility.

Mack does not argue nor did the trial court find that Sides failed to conduct a reasonable inquiry into the law on attorney's charging liens in North Carolina. The record is silent on the matter. Thus, assuming a reasonable inquiry, the pivotal question is whether a reasonable person in Sides' position (i.e., an attorney), after having read and studied the applicable law as previously set forth in this opinion, would have concluded that she had the right to assert an attorney's charging lien under the circumstances of this case. The answer is no. Accordingly, the trial court's order imposing sanctions upon Sides for violation of the legal sufficiency prong of Rule 11 must be upheld. *See Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989) (trial court's decision to impose or not to impose sanctions reviewable *de novo* as a legal issue).

At the Rule 11 hearing, Sides made no argument that her notice of lien was warranted by a good faith extension of existing North Carolina law. As previously noted, Sides' sole argument below was that existing North Carolina law supported her filing of the notice of lien, despite the fact that she had withdrawn from represen-tation of Mack. Therefore, as the issue was not raised, we do not address whether Sides is insulated from the imposition of Rule 11 sanctions because her notice of lien may have been warranted by a good faith extension of existing law.

MACK v. MOORE

[107 N.C. App. 87 (1992)]

## II

## Improper Purpose

[4] Sides argues that the record does not support the trial court's conclusion that she violated the improper purpose prong of Rule 11 by filing her notice of lien. We disagree.

Under Rule 11, an objective standard is used to determine whether a paper has been interposed for an improper purpose, with the burden on the movant to prove such improper purpose. *Bryson*, 330 N.C. at 656, 412 S.E.2d at 333. In this regard, the relevant inquiry is whether the existence of an improper purpose may be inferred from the alleged offender's objective behavior. *Joseph* at § 13(A). An improper purpose is "any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." *Id.* at § 13(C) (Supp. 1992). For example, an improper purpose may be inferred from "the service or filing of excessive, successive, or repetitive [papers] . . . ," from "filing successive lawsuits despite the res judicata bar of earlier judgments," from "failing to serve the adversary with contested motions," from filing numerous dispositive motions when trial is imminent, from "the filing of meritless papers by counsel who have extensive experience in the pertinent area of law," from "filing suit with no factual basis for the purpose of 'fishing' for some evidence of liability," from "continuing to press an obviously meritless claim after being specifically advised of its meritlessness by a judge or magistrate," or from "filing papers containing 'scandalous, libellous, and impertinent matters' for the purpose of harassing a party or counsel." *Id.* In addition, improper purposes may be inferred from the noticing of witness depositions six days before trial, the attendance of which would require extensive travel and interfere with opposing counsel's final trial preparations. *Turner*, 325 N.C. at 171, 381 S.E.2d at 717.

However, just as the Rule 11 movant's subjective belief that a paper has been filed for an improper purpose is immaterial in determining whether an alleged offender's conduct is sanctionable, *Taylor v. Taylor Products, Inc.*, 105 N.C. App. 620, 632, 414 S.E.2d 568, 576-77 (1992), whether the conduct does in fact harass is also not relevant to the issue. *Joseph* at § 13(A). Rather, the dispositive question in the instant case is whether the filing of the notice of lien supports a strong inference of improper purpose on the part of Sides. *See id.* (strong inference of improper purpose re-

quired to support imposition of sanctions on this basis). While Sides' filing ·of the notice of lien after having withdrawn from Mack's case violated the legal sufficiency prong of the rule, in this case that itself does not support a strong inference of improper purpose. However, the totality of the circumstances does.

Sides' notice of lien asserted a right to recovery on the basis of quantum meruit *plus* a percentage of the judgment. Not even a validly asserted attorney's charging lien entitles the claimant to double recovery of his or her fees. In addition, the evidence before the trial court reveals that Sides withdrew from her representation of Mack out of anger at Mack for Mack's refusal to accept a settlement offer. In light of the obviously strained relationship between Sides and Mack, and because it is utterly unreasonable for an attorney, particularly one who has withdrawn from the case, to file an attorney's charging lien seeking recovery of fees based on both quantum meruit and a percentage of the judgment, there exists a strong inference of improper purpose by Sides, i.e., harassment of Mack and her attorneys, in filing the notice of lien. Accordingly, the trial court's imposition of Rule 11 sanctions based on Sides' alleged improper purpose in filing her notice of lien must be upheld.

For the foregoing reasons, the order of the trial court is

Affirmed.

Judges PARKER and COZORT concur.