MARK A. WARD, Plaintiff,
v.
JETT PROPERTIES, LLC, Defendant.
No. COA08-1508.
Court of Appeals of North Carolina.
Filed February 2, 2010.
This case not for publication
Mark A. Ward, pro se, plaintiff-appellant.
Hinshaw & Jacobs, LLP, by Robert D. Hinshaw, for defendant-appellee.
GEER, Judge.
Plaintiff Mark A. Ward appeals the trial court's order dismissing his defamation claim against defendant Jett Properties, LLC, and imposing Rule 11 sanctions against him. Because plaintiff's complaint fails to allege all of the essential elements of libel per se or libel per quod, we affirm the trial court's dismissal of his complaint. We also hold that the trial court's findings of fact support its conclusion that plaintiff filed his complaint for an improper purpose. The trial court, however, failed to make sufficient findings of fact explaining the basis for the particular amount of the sanction imposed, and we are, therefore, required to remand for the necessary findings of fact.

Facts
On 3 July 2008, plaintiff, proceeding pro se, filed a complaint against defendant in Forsyth County Superior Court, seeking damages for intentional infliction of emotional distress and defamation. Plaintiff lives in Unit #21 at Buckeye Manor Townhomes, which are owned and operated by defendant. In his complaint, plaintiff alleged that he sent a letter to defendant several months prior to the filing of the complaint in which he notified defendant of a dispute with neighboring tenants. In that letter, plaintiff complained that his neighbors were parking their vehicles in unassigned spots, blocking his vehicle, and engaging in hostile conduct towards him. He asked in this letter that defendant take action to prevent these incidents in the future.
Plaintiff's complaint alleged that defendant, in response to his letter, sent him a letter threatening to evict him, to direct the homeowners' association to take over his parking space, and to have him targeted by law enforcement officers for driving a vehicle without North Carolina tags. Plaintiff's complaint further alleged that he "reasonably believed that defendant intended to carry out the threats, and as a result, plaintiff lived in constant fear that plaintiff would suffer physical harm at the hands of defendant." According to the complaint, plaintiff "suffered severe mental pain, fright, distress, shock, anxiety, and anguish as a consequence, to plaintiff's damage."
Plaintiff's complaint also alleged that the letter sent by defendant to him contained false and defamatory statements. Specifically, the complaint alleged that the following statements in defendant's letter were false and defamatory:
"The letter you sent via Certified Mail seems an expensive way for you to complain but since this kind of thing seems to be a hobby for you let us assure you that we are taking your continued harassment very seriously.
Please be advised that we have contacted our attorney once again about your continued pestering behavior.
Your harassment has caused several tenants to move from Buckeye and be warned that if your continued threats or frivolous civil summons cause one of our tenants to move out we will seek from you and win recovery for loss of income for as long as the townhouse remains unoccupied, attorney fees, any cost to prepare the vacated townhouse for new tenant move in, and any awards that the court may deem suitable for the harassment we have put up with.
It is sad that the children of our tenants do not feel safe in their own yard (the Common Grounds of Buckeye Townhomes) because they feel they are being stalked by you and your constant gawking, picture taking, threats, etc.
We have advised our attorney to do whatever it takes to stop your nuisance behavior and to take any legal action for harassment and any other legitimate complaint we can bring before you.
We have also contacted the president of the Home Owners association regarding your irritating and unwarranted complaints.
From our understanding he has met with you more than once regarding the problems you have created since you have been a Buckeye tenant.
The Home Owners Association President also informed us that he is going to contact your landlord about the constant trouble you seem to instigate.
We are pressing to have you removed from Buckeye Townhomes for causing so many unjustified problems.
We look forward to seeing you in court again for the other civil summons filed against our tenants in #11 and hope to see you even more embarrassed this time than last when the judge orders you to stop this harassment and reimburse us for the time and effort we have wasted enduring your nonsense."
(Emphasis original.)
The complaint alleged that "[s]uch defamatory matter was delivered by defendant to Robert D. Hinshaw, Buckeye Townhomes Homeowners Association, and Deputy James G. Teague, to be read by those persons who understood that the communication referred to the plaintiff." The complaint further alleged that "[i]n making this communication, defendant intended it to mean that plaintiff was unworthy and was intended to deprive plaintiff of his good name, reputation, to bring the plaintiff into scandal, ridicule and disrepute before his friends, neighbors, acquaintances, and the public in general, and to hold plaintiff up to public scorn, contempt, ridicule and disgrace."
The complaint alleged that plaintiff's reputation was injured and that he had "suffered a tremendous amount of embarrassment, humiliation, and mental agony" and "been held in contempt, calumny, distrust, and ridicule." Finally, the complaint alleged that "[a]t the time of the willful defamatory publication, defendant knew that the words were untrue, and in making the willful defamatory publication, defendant acted with malice toward plaintiff with such recklessness and carelessness as to amount to a wanton disregard of the rights of plaintiff" and to warrant punitive damages.
In response, defendant filed a motion to dismiss pursuant to Rule 12(b)(6), contending that plaintiff had failed to allege the essential elements of a claim for defamation or for intentional infliction of emotional distress. Defendant also filed a motion for sanctions pursuant to Rule 11, alleging that plaintiff had filed a previous lawsuit against defendant that was dismissed and resulted in plaintiff being sanctioned in the amount of $2,000.00 and that plaintiff had filed over 50 actions in the last six years, some of which were for identical complaints.
On 3 September 2008, the trial court granted defendant's motion to dismiss plaintiff's claims with prejudice. The trial court also imposed Rule 11 sanctions on plaintiff of $2,000.00 for defendant's attorneys' fees and costs. Plaintiff timely appealed to this Court.

I
Plaintiff first contends that his complaint sufficiently stated a claim for defamation to survive defendant's motion to dismiss.[1] This Court reviews a trial court's ruling on a motion to dismiss de novo. Leary v. N.C. Forest Prods., Inc., 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, aff'd per curiam, 357 N.C. 567, 597 S.E.2d 673 (2003). We must, therefore, determine whether the allegations in plaintiff's complaint, if treated as true, are sufficient to state a legal claim for relief. Id.
"To be actionable, a defamatory statement must be false and must be communicated to a person or persons other than the person defamed." Andrews v. Elliot, 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993). In addition, in North Carolina, our courts
"recognize[] three classes of libel: (1) publications obviously defamatory which are called libel per se; (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) publications not obviously defamatory but when considered with innuendo, colloquium, and explanatory circumstances become libelous, which are termed libels per quod."
Craven v. SEIU Cope, 188 N.C. App. 814, 816-17, 656 S.E.2d 729, 732 (2008) (quoting Daniels v. Metro Magazine Holding Co., 179 N.C. App. 533, 538, 634 S.E.2d 586, 590 (2006), appeal dismissed and disc. review denied, 361 N.C. 692, 654 S.E.2d 251 (2007)).
On appeal, plaintiff argues only generally that defendant "published derogatory statements to third parties about Plaintiff[,]" that the complaint "contained allegations sufficient to show that the matter complained of was defamatory as to the Plaintiff[,]" and that "the defamatory matter was communicated to third persons who understood that it referred to the Plaintiff." (Internal citation to the record omitted.) Plaintiff's complaint purports to allege claims for libel per se and libel per quod. Plaintiff does not, however, on appeal, specifically explain in what way his complaint's allegations are sufficient to fall into one of those two categories of libel.
This Court has defined libel per se as
"a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace."
Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002) (quoting Phillips v. Winston-Salem/Forsyth County Bd. of Educ., 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994), disc. review denied, 340 N.C. 115, 456 S.E.2d 318 (1995)), appeal dismissed and disc. review denied, 357 N.C. 163, 580 S.E.2d 361, cert. denied, 540 U.S. 965, 157 L. Ed. 2d 310, 124 S. Ct. 431 (2003).
A court reviewing an allegedly defamatory statement must review the words "as ordinary people would understand" them. Renwick v. News & Observer Pub. Co., 310 N.C. 312, 319, 312 S.E.2d 405, 410, cert. denied, 469 U.S. 858, 83 L. Ed. 2d 121, 105 S. Ct. 187 (1984). In an action for libel or slander per se, "`malice and damages are presumed from the fact of publication and no proof is required as to any resulting injury.'" Id. at 316, 312 S.E.2d at 408 (quoting Flake v. Greensboro News Co., 212 N.C. 780, 785, 195 S.E. 55, 59 (1938)).
In his complaint, plaintiff alleges that defendant's letter subjected him to "public scorn, contempt, ridicule and disgrace" and, therefore, amounts to libel per se. Our appellate courts have, however, consistently set a high threshold for plaintiffs attempting to allege libel per se. Thus, it is well established that "alleged false statements made by defendants, calling plaintiff `dishonest' or charging that plaintiff was untruthful and an unreliable employee, are not actionable per se." Stutts v. Duke Power Co., 47 N.C. App. 76, 82, 266 S.E.2d 861, 865 (1980). Likewise, an insurance company's statement that it was cancelling the plaintiff's policy because of his "`infavorable [sic] personal habits'" was not libelous per se. See Robinson v. Nationwide Ins. Co., 273 N.C. 391, 395, 159 S.E.2d 896, 899 (1968). Finally, our Supreme Court held in Penner v. Elliott, 225 N.C. 33, 34, 33 S.E.2d 124, 125 (1945), that no claim for libel per se existed for statements that the plaintiff was a man who would not pay his debts, would not work, and was "a man that respectable people had best not have anything to do with."
In this case, plaintiff has identified as libelous defendant's statements that plaintiff was causing problems in his community with other tenants and was harassing or pestering defendant with his frivolous complaints. We do not believe that such statements are more severe than accusations of dishonesty or unfavorable personal habits or characterizations of a person as a dead-beat or disreputable, such as those statements previously found by our appellate courts not to amount to libel per se. See also Perry v. Wiltse, 256 Ill. App. 3d 422, 424, 628 N.E.2d 626, 628 (Ill. App. 1 Dist., 1993) (holding that statement made by building manager to tenant's landlord that tenant had called and harassed her every night with complaints was not libelous per se, because manager used word harass "not to suggest the commission of a criminal offense but rather in the sense of to bother or irritate").
Further, this Court has stressed that "[r]hetorical hyperbole and expressions of opinion not asserting provable facts are protected speech." Daniels, 179 N.C. App. at 539, 634 S.E.2d at 590. Thus, for example, a statement that an insurance adjuster spoke in a "sinister" or "Gestapo" voice was not actionable because it represented the speaker's opinion. Id. at 540, 634 S.E.2d at 591. In Greenbelt Coop. Pub. Ass'n v. Bresler, 398 U.S. 6, 14, 26 L. Ed. 2d 6, 15, 90 S. Ct. 1537, 1542 (1970), the United States Supreme Court concluded that a characterization of a real estate developer's negotiation position as "blackmail" was "no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable."
In determining whether a statement can be reasonably interpreted as stating actual facts about an individual or whether it constitutes opinion or rhetorical hyperbole, "courts look to the circumstances in which the statement is made." Daniels, 179 N.C. App. at 539, 634 S.E.2d at 590 (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 21, 111 L. Ed. 2d 1, 19, 110 S. Ct. 2695, 2707 (1990)). The Court explained in Daniels that "[s]pecifically, we consider whether the language used is `loose, figurative, or hyperbolic language,' as well as the `general tenor of the article.'" Id. at 540, 634 S.E.2d at 590 (quoting Milkovich, 497 U.S. at 21, 111 L. Ed. 2d at 19, 110 S. Ct. at 2707).
In this case, defendant's letter was sent in response to a demand letter by plaintiff, accusing defendant of misconduct. In this context and after reading the entire document, defendant's characterization of plaintiff's conduct as harassment, pestering, threatening, irritating, and nonsense amounts to statements of opinion or rhetorical hyperbole that are not actionable as libel per se.
Turning to plaintiff's libel per quod claim, our courts have defined such a claim as involving "`publications not obviously defamatory but [that] when considered with innuendo, colloquium, and explanatory circumstances become libelous . . . .'" Craven, 188 N.C. App. at 816-17, 656 S.E.2d at 732 (quoting Daniels, 179 N.C. App. at 538, 634 S.E.2d at 590). In Holleman v. Aiken, 193 N.C. App. 484, 499-500, 668 S.E.2d 579, 589 (2008) (quoting Raymond U v. Duke Univ., 91 N.C. App. 171, 181, 371 S.E.2d 701, 708, disc. review denied, 323 N.C. 629, 374 S.E.2d 590 (1988)), this Court explained that
"[u]nder a libel per quod theory, there must be a publication or communication knowingly made by the defendant to a third person. The publication must have been intended by defendant to be defamatory and had to be understood as such by those to whom it was published. For these reasons, both the innuendo and special damages must be proven."
In Donovan v. Fiumara, 114 N.C. App. 524, 527, 442 S.E.2d 572, 575 (1994) (quoting Williams v. Freight Lines, 10 N.C. App. 384, 387, 179 S.E.2d 319, 322 (1971)), we explained that "[i]n the context of an action for defamation, special damage means `pecuniary loss[.]'" If plaintiff fails to allege that the alleged libel caused him pecuniary damage, he or she has failed to state a claim for libel per quod. Id. Here, plaintiff's complaint contains no allegation of pecuniary loss. Accordingly, his complaint does not state a claim for libel per quod, and the trial court properly granted defendant's motion to dismiss plaintiff's defamation claim.

II
Plaintiff also argues that the trial court erred in imposing Rule 11 sanctions on him. This Court reviews de novo a trial court's order granting a motion for Rule 11 sanctions. Our task is to determine
(1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a).
Turner v. Duke Univ., 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). "The appropriateness of the sanction imposed, however, is reviewed under an abuse of discretion standard." Ward v. Jett Props., LLC, 191 N.C. App. 605, 607, 663 S.E.2d 862, 864 (2008).
Rule 11(a) of the Rules of Civil Procedure provides that
[a] party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
Thus, "`[t]here are three parts to a Rule 11 analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose. . .. A violation of any one of these requirements mandates the imposition of sanctions under Rule 11.'" Static Control Components, Inc. v. Vogler, 152 N.C. App. 599, 603, 568 S.E.2d 305, 308 (2002) (quoting Dodd v. Steele, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365, disc. review denied, 337 N.C. 691, 448 S.E.2d 521 (1994)).
Here, the trial court found:
[I]t appearing to the Court that the complaint of Plaintiff is the fourth complaint filed against Defendant in the past year, all of which have been dismissed and reviewed by the Court of Appeals without success; that the Plaintiff has filed more than 50 actions in this county in the last 5 years; that the Plaintiff has been sanctioned under Rule 11 for his previous cases against the Defendant; that the instant case was filed without due regard for the prevailing law and that the instant case was filed for an improper purpose, namely to continue his harassment of the Defendant:
THEREFORE THE COURT finds that the instant lawsuit was filed knowing that the claims were not warranted by existing law and further were filed for an improper purpose, that is harassment of the Defendant.
Thus, the trial court awarded sanctions because it found that plaintiff's complaint was filed without legal sufficiency and/or for an improper purpose. The trial court then imposed on plaintiff sanctions in the amount of $2,000.00 to reimburse defendant for attorneys' fees and costs.
We need not decide whether the trial court erred in awarding sanctions based on the ground that the complaint was legally insufficient because we agree with the trial court that the unchallenged findings of fact it made in support of its conclusion of improper purpose support the award of sanctions. See Dodd, 114 N.C. App. at 635, 442 S.E.2d at 365 (holding that because it had already found a violation of one prong of Rule 11, it was "unnecessary to address the others"). "The improper purpose prong of Rule 11 is separate and distinct from the factual and legal sufficiency requirements." Bryson v. Sullivan, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992). Thus, "[e]ven if the complaint is well grounded in fact and in law, it may nonetheless violate the improper purpose prong of Rule 11." McClerin v. R-M Indus., Inc., 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995).
"Under Rule 11, an objective standard is used to determine whether a paper has been interposed for an improper purpose, with the burden on the movant to prove such improper purpose. In this regard, the relevant inquiry is whether the existence of an improper purpose may be inferred from the alleged offender's objective behavior." Mack v. Moore, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992) (internal citation omitted). An "improper purpose is any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." Id. (internal quotation marks omitted).
In this case, the trial court found that plaintiff had filed and had dismissed at least four complaints against defendant in the last year and that all of those dismissals had been upheld on appeal. The trial court also found that plaintiff filed over 50 actions in Forsyth County in the last five years and that plaintiff had been sanctioned in his previous cases against defendant. These findings, unchallenged by plaintiff on appeal, are sufficient to support the trial court's conclusion that plaintiff's complaint was filed for an improper purpose. See Ward, 191 N.C. App. at 609, 663 S.E.2d at 865 ("Improper purpose may, however, be inferred from the service or filing of excessive, successive, or repetitive papers or from continuing to press an obviously meritless claim after being specifically advised of its meritlessness by a judge or magistrate." (internal citation and quotation marks omitted)).
Although we uphold the trial court's conclusion that plaintiff filed his complaint for an improper purpose, we must nonetheless remand this case because the trial court failed to make sufficient findings of fact and conclusions of law to explain and support its particular sanction of $2,000.00 in attorneys' fees and costs. In fact, the trial court did not make any findings of fact at all relating to the amount of the sanction. Instead, the sole reference in the order to the sanction is: "IT IS THEREFORE ORDERED that the Defendant's Motion is Granted and the Defendant is awarded the sum of Two Thousand Dollars ($2,000.00) for attorney fees and costs of this action from the Plaintiff."
In Dunn v. Canoy, 180 N.C. App. 30, 49, 636 S.E.2d 243, 255 (2006), appeal dismissed and disc. review denied, 361 N.C. 351, 645 S.E.2d 766 (2007), this Court remanded an order awarding sanctions when the trial court's order did not explain how the trial court calculated the amount it selected for the award or why the trial court thought that was the appropriate sanction. This Court explained:
A trial court, in making an award of attorneys' fees, must explain why the particular award is appropriate and how the court arrived at the particular amount. Specifically, an award of attorney's fees usually requires that the trial court enter findings of fact as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence.
Id. (internal citation and quotation marks omitted).
Here, the trial court stated that it was awarding $2,000.00 in attorneys' fees and costs, but made no findings regarding time and labor expended, skill required, customary fees for like work, or the experience and ability of the attorney. Nor does the order include any other explanation for the sanction amount. Since no findings of fact exist to support the amount of the trial court's sanction, we must remand for further findings of fact. See Sholar Bus. Assocs. v. Davis, 138 N.C. App. 298, 303, 531 S.E.2d 236, 240 (2000) ("As a general rule, remand is necessary where a trial court fails to enter findings of fact and conclusions of law regarding a motion for sanctions pursuant to Rule 11.").
Affirmed in part; reversed and remanded in part.
Judges BRYANT and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] As plaintiff makes no argument in his brief about the propriety of the trial court's dismissal of his claim for intentional infliction of emotional distress, we deem that argument abandoned and do not address it. See N.C.R. App. P. 28(a).