An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-963

NORTH CAROLINA COURT OF APPEALS

Filed:  20 May 2014

The Estate of BETTY ANN W. AMOS,
by and through BARBARA A. WILLIAMS
and JUDY A. JAMES in their
capacities as CO-EXECUTORS of The
Estate of BETTY ANN W. AMOS,
 Plaintiffs

  v.                                        Forsyth County
             No. 12 CVS 4964

W. Scott Moore, M.D.; NEPHROLOGY
ASSOCIATES, P.L.L.C.; NOVANT
HEALTH, INC.; and FORSYTH MEMORIAL
HOSPITAL, INC., both d/b/a FORSYTH
MEDICAL CENTER,
 Defendants


Appeal by plaintiffs from order entered 10 May 2013 by Judge R. Stuart Albright in Forsyth County Superior Court. Heard in the Court of Appeals 8 January 2014.


  *Hedrick Gardner Kincheloe & Garofalo, LLP, by Patricia P. Shields, Maureen R. McDonald, and Joshua D. Neighbors, for plaintiff-appellants.*

  *Carruthers & Roth, P.A., by Norman F. Klick, Jr., Richard L. Vanore, and Robert N. Young, for defendant-appellees W. Scott Moore, M.D. and Nephrology Associates, P.L.L.C.*

  *Coffey Bomar, LLP, by J. Chad Bomar, Tamura D. Coffey, and J. Rebekah Biggerstaff, for defendant-appellees Novant Health, Inc. and Forsyth Memorial Hospital, Inc. both d/b/a Forsyth Medical Center.*

CALABRIA, Judge.

Barbara A. Williams and Judy A. James ("plaintiffs"), co-executors of the Estate of Betty Ann W. Amos ("decedent"), appeal from an order imposing the sanction of dismissing their complaint against W. Scott Moore, M.D. ("Dr. Moore"); Nephrology Associates, P.L.L.C.; and Novant Health, Inc. and Forsyth Memorial Hospital, Inc., both d/b/a Forsyth Medical Center ("FMC") (collectively "defendants") pursuant to Rules 9(j), 11, and 41 of the North Carolina Rules of Civil Procedure. We reverse.

On the morning of 2 November 2007, decedent began exhibiting symptoms of a "cerebral vascular accident" while undergoing dialysis at the King Dialysis Center. Decedent was taken by ambulance to the FMC emergency department, where she was assessed and treated. Dr. Moore, decedent's attending physician, admitted her to the FMC renal ward, where she was administered heparin. Over the next several hours, decedent's condition continued to decline. Decedent complained of intense and severe pain in her head and repeatedly vomited over a period of eight hours, but FMC nursing staff refused to call Dr. Moore. A CT scan later revealed a large right intracranial cerebral hemorrhage. Decedent was transferred to palliative care, where

she died on the evening of 3 November 2007.

Plaintiffs sought the advice of attorney J. Carlyle Hearn, II ("Hearn") in late November or early December 2007 regarding potential wrongful death claims. Hearn agreed to represent plaintiffs and confirmed the terms of his engagement in a letter to plaintiffs dated 6 February 2008. After Hearn reviewed a "rather comprehensive" copy of decedent's medical records regarding her treatment at FMC (the "2007 treatment records"), Hearn searched for potential expert witnesses to review decedent's care. Overall, Hearn contacted six to eight potential experts.

Since plaintiffs were required to file a wrongful death complaint within two years of decedent's death, Hearn filed a motion to extend the statute of limitations on 28 October 2009. According to Hearn's motion, he "need[ed] to secure all pertinent medical records of the decedent . . . and, pursuant to N.C.R. Civ. Pro. 9(j), [decedent's] medical treatment must be reviewed by a person or persons who are reasonably expected to qualify as an expert witness(es)[.]" The trial court found good cause existed to extend the statute of limitations, and granted an extension until 2 March 2010.

After Hearn secured experts who were willing to testify

that defendants breached the standard of care, he was able to provide Rule 9(j) certifications during the extension period. Plaintiffs filed their initial complaint on 2 March 2010, alleging, *inter alia*, that Dr. Moore negligently failed to order a neurological consult for decedent, and that FMC's nursing staff failed to properly monitor, respond, and care for decedent or to contact decedent's attending physician after being notified on several occasions that she was in severe pain and repeatedly vomiting over a period of eight hours. Defendants filed a motion to set aside the extension to the statute of limitations and a motion to dismiss. Plaintiffs voluntarily dismissed their complaint, without prejudice, in July 2011. Plaintiffs refiled their complaint in July 2012. Defendants again filed motions to set aside the extension to the statute of limitations and to dismiss plaintiffs' complaint.

On 10 May 2013, the trial court concluded that Hearn "knowingly and intentionally made a material misrepresentation to the Court that he needed to collect pertinent medical records when he moved the court for an extension of the statute of limitations[,]" and that "[n]o good cause existed for the granting of the motion for extension of the statute of limitations." The trial court entered an order granting

defendants' motion to dismiss pursuant to Rules 9(j), 11, and 41. Plaintiffs appeal.

The issue before this Court is whether the trial court erred by concluding that no good cause existed for the granting of an extension of the statute of limitations and imposing the sanction of dismissing plaintiffs' complaint pursuant to Rules 9(j), 11, and 41 of the North Carolina Rules of Civil Procedure.

The trial court's decision to impose or not impose mandatory sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue. *Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). This Court determines whether the findings of fact are supported by a sufficiency of the evidence, whether the conclusions of law are supported by the findings, and whether the conclusions support the trial court's judgment. *Id.* "If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions[.]" *Id.*

Rule 11 of the North Carolina Rules of Civil Procedure requires that every filed motion be (1) well grounded in fact after reasonable inquiry; (2) warranted by existing law or a good faith argument for the extension, modification, or reversal

of existing law; and (3) not interposed for any improper purpose, such as to cause unnecessary delay. N.C. Gen. Stat. § 1A-1, Rule 11(a) (2013). Generally, both parties and attorneys may be subject to sanctions for violations of the improper purpose prong of Rule 11. *Bryson v. Sullivan*, 330 N.C. 644, 656, 412 S.E.2d 327, 333 (1992). "Further, both are subject to an objective standard to determine the existence of such an improper purpose." *Id.* (citation omitted.) The burden is on the movant to prove an improper purpose. *Brown v. Hurley*, 124 N.C. App. 377, 382, 477 S.E.2d 234, 238 (1996). "Whereas a represented party may rely on his attorney's advice as to the legal sufficiency of his claims, he will be held responsible if his evident purpose is to harass, persecute, otherwise vex his opponents, or cause them unnecessary cost or delay." *Bryson*, 330 N.C. at 663, 412 S.E.2d at 337 (citation omitted).

In *Bryson*, the defendant specifically alleged that the plaintiffs' complaint was filed for the improper purpose of harassment, delay, and needlessly increasing the costs of litigation. However, the trial court denied the defendant's motion for Rule 11 sanctions. *Id.* at 652-53, 412 S.E.2d at 331. Our Supreme Court considered whether litigants who rely in good faith upon advice of counsel concerning the legal basis for

their claim could have sanctions imposed against them under the legal sufficiency prong of Rule 11. *Id*. at 660, 412 S.E.2d at 335-36. Because the evidence supported a finding that the parties acted in good faith upon the advice of counsel, the Court held that the parties could not have sanctions imposed against them based on the legal sufficiency prong of Rule 11. *Id*. at 662, 412 S.E.2d at 336-37. In addition, the evidence was insufficient to sustain sanctions under the improper purpose prong of Rule 11. *Id*. at 664, 412 S.E.2d at 339. In *Taylor v. Collins*, this Court held that the imposition of Rule 11 sanctions was improper when the respondent relied in good faith on his attorney regarding the legal sufficiency of his claims. 128 N.C. App. 46, 53, 493 S.E.2d 475, 480 (1997).

Examples of circumstances from which an improper purpose may be inferred include the service or filing of excessive, successive, or repetitive papers, the filing of meritless papers by counsel who have extensive experience in the pertinent area of law, filing complaints with no factual basis for the purpose of fishing for evidence of liability, and continuing to press an obviously meritless claim after being specifically advised of its meritlessness by a judge or magistrate. *Mack v. Moore*, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992).

In the instant case, the trial court found and concluded that plaintiffs' motion to extend the statute of limitations was made for an improper purpose, to cause unnecessary delay, and was not well grounded in fact. Specifically, the Rule 11 sanctions were based solely on the trial court's conclusion that Hearn's statement that he needed to collect "pertinent medical records" was a "misrepresentation to the Court." However, nothing in the record indicates that plaintiffs misled Hearn regarding the facts and circumstances of their claims. Instead, plaintiffs relied in good faith upon Hearn's legal expertise and his prior experience in medical malpractice actions. Defendants, as the moving parties, had the burden of proof. However, defendants did not present any evidence showing that plaintiffs were at fault for the delay caused by Hearn's request for additional time, nor that plaintiffs' purpose for the motion was to "harass, persecute, otherwise vex [their] opponents, or cause them unnecessary cost or delay." *Bryson*, 330 N.C. at 663, 412 S.E.2d at 337 (citation omitted).

In the motion, Hearn stated he needed to "secure all pertinent medical records of the decedent," that decedent's "medical treatment must be reviewed by a person or persons who are reasonably expected to qualify as an expert witness(es),"

and that it was "very likely that medical experts in several distinct areas of medicine" would be needed to review decedent's treatment. Hearn specifically testified at his deposition that he included the statement in the motion to extend the statute of limitations because

> certain experts[] demand certain medical records. I could not on the date I did this motion [sic] tell you that there may not be medical records that I did not have at the time that could be medical records that a nephrologist or a nursing care . . . expert would think pertinent and therefore needed to be secured.

Hearn also indicated that in his previous experience with medical malpractice and wrongful death cases, prior medical records were usually necessary, and this impression was supported by a potential expert who indicated that decedent's pre-existing medical conditions would be an issue for an expert witness.

At his deposition, Hearn testified that when he attempted to contact nephrology experts in September and October 2009, prior to the expiration of the initial statute of limitations, Hearn discovered that the experts were unavailable to review the case until their return from a professional conference. Hearn knew the time would be close to or after the expiration of the statute of limitations. Hearn also testified that he had

contacted several experts who were unwilling to become involved in the case. One of the experts indicated that decedent's age and pre-existing medical conditions caused some concern. Hearn also stated that plaintiffs were unaware of the details of some of decedent's previous medical procedures.

Even though the trial court based its decision to impose sanctions and dismiss plaintiffs' complaint on a finding that Hearn had misrepresented his need for additional medical records and filed the motion to extend the statute of limitations for the improper purpose of undue delay, those findings are not supported by the evidence in the record. While hindsight shows that Hearn did possess the 2007 treatment records at the time he filed the motion, and did not secure any additional records during the extension period, "in determining compliance with Rule 11, courts should avoid hindsight and resolve all doubts in favor of the signer." *Coventry Woods Neighborhood Ass'n, Inc. v. City of Charlotte*, 213 N.C. App. 236, 243, 713 S.E.2d 162, 167 (2011) (citation omitted).

Defendants, as the moving parties, had the burden of proof. However, defendants did not present any evidence showing that plaintiffs were at fault for the delay caused by Hearn's request for additional time, nor that plaintiffs' purpose for the motion

was to "harass, persecute, otherwise vex [their] opponents, or cause them unnecessary cost or delay." *Bryson*, 330 N.C. at 663, 412 S.E.2d at 337 (citation omitted). The trial court's findings of fact are not supported by a sufficiency of the evidence in the record, and the record evidence in the instant case indicates that Hearn's motion to extend the statute of limitations was imposed for a proper purpose and not undertaken in bad faith. Therefore, the trial court's conclusions of law are not supported by the findings and do not support the judgment. *Turner*, 325 N.C. at 165, 381 S.E.2d at 714. The trial court improperly imposed sanctions in setting aside the extension of the statute of limitations and dismissing plaintiffs' complaint. We reverse.

Reversed.

Judges BRYANT and GEER concur.

Report per Rule 30(e).