COVENTRY WOODS NEIGHBORHOOD ASSOCIATION INC., A NORTH CAROLINA NON-PROFIT CORPORATION, JOHN F. BORDSEN AND WIFE, PATRICIA BRESINA, MARTHA L. MCAULAY, AND JOAN E. PROVOST, EVA COLE MATTHEWS, CHRIS JOHNSON AND WIFE, SHANNON JONES, REBECCA S. GARDNER, JOHN WHITE, RONALD MATTHEWS AND WIFE, EVELYN MATTHEWS, AND SHIRLEY JONES, AND THOMAS R. MYERS, PLAINTIFFS V. CITY OF CHARLOTTE, NORTH CAROLINA, A MUNICIPAL CORPORATION, CHARLOTTE-MECKLENBURG PLANNING COMMISSION, AN AGENCY OF THE CITY OF CHARLOTTE, AND INDEPENDENCE CAPITAL REALTY, LLC, A NORTH CAROLINA LIMITED LIABILITY CORPORATION, DEFENDANTS. AND COVENTRY WOODS NEIGHBORHOOD ASSOCIATION, INC., A NORTH CAROLINA NON-PROFIT CORPORATION, PETITIONER V. CITY OF CHARLOTTE, NORTH CAROLINA, A MUNICIPAL CORPORATION, CHARLOTTE ZONING BOARD OF ADJUSTMENT, AN AGENCY OF THE CITY OF CHARLOTTE, AND INDEPENDENCE CAPITAL REALTY, LLC, A NORTH CAROLINA LIMITED LIABILITY CORPORATION, RESPONDENTS

No. COA10-1551

(Filed 5 July 2011)

**Pleadings— Rule 11 sanctions—failure to show principal purpose to harass or cause unnecessary delay**

The trial court erred by imposing sanctions against plaintiffs under the improper purpose prong of N.C.G.S. § 1A-1, Rule 11. Based on the evidence in the record and viewed objectively under the totality of the circumstances, plaintiffs' continued prosecution of their action and the language concerning project delay in their neighborhood association newsletter did not create a strong infer-

COVENTRY WOODS NEIGHBORHOOD ASS'N, INC. v. CITY OF CHARLOTTE

[213 N.C. App. 236 (2011)]

ence that plaintiffs' principal purpose in filing their three actions was to harass or to cause unnecessary delay and disruption.

Appeal by plaintiffs/petitioner(s) and their counsel from judgment entered 3 August 2010 by Judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 May 2011.

*Kenneth T. Davies for plaintiffs/petitioner(s) appellants.*

*Kenneth T. Davies, pro se, appellant.*

*Robinson, Bradshaw & Hinson, P.A., by Richard A. Vinroot and Matthew F. Tilley, for Independence Capital Realty, LLC, defendant/respondent appellee.*

McCULLOUGH, Judge.

Plaintiffs/petitioner(s), Coventry Woods Neighborhood Association, Inc., John F. Bordsen, Patricia Bresina, Martha L. McAulay, Joan E. Provost, Eva Cole Matthews, Chris Johnson, Shannon Jones, Rebecca S. Gardner, John White, Ronald Matthews, Evelyn Matthews, Shirley Jones, and Thomas R. Myers (collectively, "plaintiffs/petitioner(s)"), and their counsel, Kenneth T. Davies (collectively, the "appellants") appeal from an amended order and judgment imposing sanctions under Rule 11 of the North Carolina Rules of Civil Procedure. After careful review, we reverse.

## I. Background

This appeal concerns the imposition of sanctions by the trial court pursuant to Rule 11 for three successive actions filed by appellants, each against the Charlotte-Mecklenburg Planning Commission ("the Commission"), the City of Charlotte ("the City"), and Independence Capital Realty, LLC ("Independence").

The individual plaintiffs/petitioner(s) in each action are individuals who either own property located in or reside within the Coventry Woods subdivision or the Cedars East subdivision, both located in Charlotte, North Carolina. Plaintiff/petitioner Coventry Woods Neighborhood Association ("CWNA") is a North Carolina non-profit corporation representing the common interests of the property owners and residents of the Coventry Woods subdivision. Both the Coventry Woods and Cedars East subdivisions abut an approximately sixteen-acre tract of real property owned by Independence.

On 14 February 2005, Independence submitted a new residential subdivision plan for its sixteen-acre tract to the City's planning staff for preliminary approval. The proposed subdivision plan, denominated Independence Woods, requested a "density bonus" that allowed up to 72 single-family homes to be built within the proposed subdivision, as opposed to the limit of 58 residences allowed in areas zoned R-4, the current zoning designation for Independence's sixteen-acre tract. Independence had previously petitioned the City to have the sixteen-acre tract rezoned from R-4 to R-12MF, which CWNA publicly opposed, but Independence's rezoning petition was denied by the Charlotte City Council. Planning staff granted preliminary approval of Independence's subdivision plan, including the density bonus, on 13 December 2006. Plaintiffs/petitioner(s) did not receive notice of the submission of Independence's subdivision plan to the Commission, nor did they receive notice of its preliminary approval at that time, as the Subdivision Ordinance of the City of Charlotte ("the Subdivision Ordinance") requires only that notice of preliminary subdivision approvals be given to the developer. However, the Subdivision Ordinance provides a ten-day period from the date of preliminary approval within which "aggrieved parties" can appeal the decision of the planning staff to the Commission.

On 5 January 2007, notice of the planning staff's preliminary approval of the Independence Woods subdivision plan was posted on the Commission's website. However, plaintiffs/petitioner(s) did not learn of the preliminary approval until early July 2007. Thereafter, plaintiffs/petitioner(s) filed a petition with the Charlotte Zoning Board of Adjustment ("ZBA") on 28 September 2007 challenging the planning staff's preliminary approval of Independence's subdivision plan without providing notice to plaintiffs/petitioner(s). Plaintiffs/petitioner(s) argued they are "aggrieved persons" under the Subdivision Ordinance because Independence Woods, as approved, would be a high-density development with the only means of ingress and egress through the neighborhoods of plaintiffs/petitioner(s), resulting in decreased property values and increased levels of noise, pollution, and traffic. The ZBA rejected plaintiffs/petitioner(s)' challenge, finding the Subdivision Ordinance did not require individual notice to be given to them. Plaintiffs/petitioner(s) also filed an appeal of the planning staff's decision to the Commission on 15 February 2008, which was denied as untimely pursuant to the Subdivision Ordinance.

Plaintiffs/petitioner(s) then commenced three separate actions in Mecklenburg County Superior Court, each raising constitutional chal-

lenges to the Commission's actions and the relevant Subdivision Ordinance provisions. The first action, No. 08-CVS-3251, filed on 18 February 2008, sought a declaratory judgment that the Subdivision Ordinance was unconstitutional both facially and as applied and requested a preliminary injunction prohibiting Independence from further construction of Independence Woods. The factual background for this first action is more fully set forth in our prior opinion, *Coventry Woods Neighborhood Ass'n v. Charlotte*, —— N.C. App. ——, 688 S.E.2d 538 (2010) (hereinafter *Coventry Woods I*). The second action, No. 08-CVS-7582, filed on 3 April 2008, petitioned the trial court for review in the nature of *certiorari*, seeking to challenge the Commission's ruling that plaintiffs/petitioner(s)' appeal was untimely. The factual background for this second action is more fully set forth in our prior opinion, *Coventry Woods Neighborhood Ass'n v. Charlotte*, No. COA09-537 (N.C. Ct. App. Feb. 2, 2010) (hereinafter *Coventry Woods II*). The third action, No. 08-CVS-9821, filed on 25 April 2008, also petitioned the trial court in the nature of *certiorari*, seeking to challenge the ZBA's ruling that plaintiffs/petitioner(s) were not entitled to individual notice prior to the planning staffs' preliminary approval of the Independence Woods subdivision plan.

On 29 February 2008, shortly after commencing the first action, CWNA published a newsletter on its website entitled "CWNA Sues City Hall," announcing their action and seeking donations to cover litigation expenses. The newsletter states that CWNA was informed by its counsel, Kenneth Davies ("Davies"), that its case was "very strong" and that, as a result of the lawsuit, the financing and development of Independence Woods would likely be delayed, or "grind to a stop." The newsletter also states that CWNA's "Number One priority" is stopping the development of Independence Woods "once and for all" and that a "successful lawsuit will benefit all neighborhoods." As a result of the posting, Independence included a motion for sanctions pursuant to Rule 11 in its answers and counterclaims filed in response to each of appellants' actions.

On 6 August 2008, the trial court entered orders dismissing each of appellants' actions, holding that appellants had no statutory or constitutional right to individual notice and that appellants had failed to timely bring their claims. Appellants appealed the decision in their first action to this Court, which was affirmed on 2 February 2010. *Coventry Woods I*, —— N.C. App. ——, 688 S.E.2d 538. Appellants then appealed our decision in *Coventry Woods I* to our Supreme Court, which was dismissed for failure to present a substantial constitu-

tional question on 14 April 2010. *Coventry Woods Neighborhood Ass'n v. Charlotte*, 364 N.C. 128, 695 S.E.2d 757 (2010). Appellants also appealed the trial court's decision in their second action to this Court, which was also affirmed on 2 February 2010. *Coventry Woods II*, No. COA09-537.

Following the trial court's dismissal of all three actions, Independence filed a consolidated motion under all three of appellants' actions renewing its motion for sanctions against appellants under Rule 11. After all of appellants' appeals were final, the trial court held two separate hearings on 25 May 2010 and 2 June 2010 to consider Independence's motion for sanctions.

Following those hearings, the trial court entered an order and judgment on 3 August 2010, concluding there was substantial evidence to show that appellants filed their three actions for an improper purpose and imposing sanctions on appellants in the sum of $33,551.79. Appellants now appeal the imposition of sanctions to this Court.

## II. Standard of review

"The trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue." *Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989).

> In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence.

*Id.*; *see also Johns v. Johns*, 195 N.C. App. 201, 206, 672 S.E.2d 34, 38 (2009). We "must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions" only if we make these three determinations in the affirmative. *Turner*, 325 N.C. at 165, 381 S.E.2d at 714.

## III. Imposition of Rule 11 sanctions

We first address appellants' argument that the trial court erred in imposing sanctions against appellants under the improper purpose prong of Rule 11. Appellants argue there is insufficient evidence to support the trial court's conclusion "that [appellants'] actions were filed for an improper purpose." Because neither party raises any challenge to the trial court's conclusions regarding the factual and legal sufficiency prongs, we address only the improper purpose prong of Rule 11.

Rule 11 of the North Carolina Rules of Civil Procedure provides, in relevant part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

N.C. Gen. Stat. § 1A-1, Rule 11 (2009). Accordingly, pursuant to Rule 11, " 'the signer certifies that three distinct things are true: the pleading is (1) warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law (legal sufficiency); (2) well grounded in fact; and (3) not interposed for any improper purpose.' " *Johns*, 195 N.C. App. at 206, 672 S.E.2d at 38 (quoting *Bumgardner v. Bumgardner*, 113 N.C. App. 314, 322, 438 S.E.2d 471, 476 (1994)). "A violation of any one of these requirements 'mandates the imposition of sanctions under Rule 11.' " *Id.* (quoting *Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365 (1994)). Our Supreme Court has held that "[t]he improper purpose prong of Rule 11 is separate and distinct from the factual and legal sufficiency requirements." *Bryson v. Sullivan*, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992). "Thus, even if a paper is well grounded in fact and law, it may still violate Rule 11 if it is served or filed for an improper purpose." *Brooks v. Giesey*, 334 N.C. 303, 315, 432 S.E.2d 339, 345-46 (1993).

"An improper purpose is 'any purpose other than one to vindicate rights . . . or to put claims of right to a proper test.' " *Brown v. Hurley*, 124 N.C. App. 377, 382, 477 S.E.2d 234, 238 (1996) (omission in original) (quoting *Mack v. Moore*, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992)). "An objective standard is used to determine whether a paper has been interposed for an improper purpose, with the burden on the movant to prove such improper purpose." *Id.* (citing *Bryson*, 330 N.C. at 663, 412 S.E.2d at 337). "In this regard, the relevant inquiry is whether the existence of an improper purpose may be inferred from the alleged offender's objective behavior." *Mack*, 107 N.C. App. at 93, 418 S.E.2d at 689. "In assessing that behavior, we look at 'the totality of the circumstances.' " *Johns*, 195 N.C. App. at 212, 672 S.E.2d at 42 (quoting *Mack*, 107 N.C. App. at 94, 418 S.E.2d at 689). In addition, this Court has held that "the preponderance of the evidence quantum of proof should be utilized in determining whether a Rule 11 violation

has occurred." *Adams v. Bank United of Texas FSB*, 167 N.C. App. 395, 402, 606 S.E.2d 149, 154 (2004). " 'There must be a strong inference of improper purpose to support [the] imposition of sanctions.' " *Kohler Co. v. McIvor*, 177 N.C. App. 396, 404, 628 S.E.2d 817, 824 (2006) (quoting *Bass v. Sides*, 120 N.C. App. 485, 488, 462 S.E.2d 838, 840 (1995)).

We note that our Supreme Court has stated, in the context of analyzing Rule 11 sanctions, that the "North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules." *Turner*, 325 N.C. at 164, 381 S.E.2d at 713. In addition, our Supreme Court added, "Decisions under the federal rules are thus pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." *Id.*; *see also Giesey*, 334 N.C. at 317, 432 S.E.2d at 347. According to our Supreme Court, "This holds true for N.C.G.S. § 1A-1, Rule 11(a)." *Giesey*, 334 N.C. at 317, 432 S.E.2d at 347. On this note, we find the following language persuasive under the circumstances of the present case:

> [I]f a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose. Thus, the purpose to vindicate rights in court must be central and sincere.

*In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990); *see also Myers v. Sessoms & Rogers, P.A.*, No. 5:10-CV-166-D, 2011 WL 683914, at *2 (E.D.N.C. Feb. 17, 2011).

Additionally, while we acknowledge that the improper purpose inquiry is separate and distinct from the factual and legal sufficiency inquiries, *Bryson*, 330 N.C. at 663, 412 S.E.2d at 337, we agree that "whether or not a pleading has a foundation in fact or is well grounded in law will often influence the determination of the signer's purpose." *Kunstler*, 914 F.2d at 518. In fact, some examples of circumstances from which an improper purpose may be inferred, including those relied on by Independence in the present case, reflect this interplay:

> [T]he filing of *meritless* papers by counsel who have extensive experience in the pertinent area of law, . . . filing suit with *no factual basis* for the purpose of fishing for some evidence of liability, . . . continuing to press an *obviously meritless* claim after being specifically advised of its meritlessness by a judge or magistrate[.]

*Mack*, 107 N.C. App. at 93, 418 S.E.2d at 689 (internal quotation marks omitted) (emphasis added). Given the unusually sparse case law sanctioning the filing of an action which is found to be well grounded in law and fact solely on the basis that it was filed for an improper purpose, we believe the circumstances of such a case to be exceptional. *See, e.g., Turner*, 325 N.C. at 171, 381 S.E.2d at 717 (Improper purpose may be inferred from the noticing and taking of witness depositions six days before trial, the attendance of which would require extensive travel and interfere with opposing counsel's final trial preparations); *Cohen v. Virginia Elec. & Power Co.*, 788 F.2d 247, 249 (4th Cir. 1986) (A finding of improper purpose in violation of Rule 11 upheld where evidence established that plaintiff and his attorney had a preconceived plan to withdraw a motion, which was otherwise legally and factually supportable, if the opposing party indicated any resistance to the motion). "Rule 11 should not have the effect of chilling creative advocacy, and therefore, in determining compliance with Rule 11, courts should avoid hindsight and resolve all doubts in favor of the signer." *Johnson v. Harris*, 149 N.C. App. 928, 938, 563 S.E.2d 224, 230 (2002) (internal quotation marks and citations omitted).

In the present case, the trial court made the following Findings of Fact:

2. The plaintiffs filed these actions in March and April, 2008, many months after Independence's subdivision plans had been approved by the City in December 2006, and after Independence had spent more than $1.2 million developing its property, notwithstanding the City's subdivision ordinance provided that any "appeals" from such approval must be filed "within ten days" thereafter.

3. At the time that these actions were filed, the plaintiffs published in their "Coventry Woods Neighborhood Association" newsletter and on its website an article which read, in part:

"CWNA Sues City Hall . . . the Coventry Woods Neighborhood Association has filed suit in North Carolina court, charging that the Charlotte Planning staff's approval of the Independence Woods Subdivision is in violation of due process. The suit was filed by CWNA attorney Kenneth Davies of Davies & Grist, the top real-estate firm in Charlotte. Davies says our case is very strong. . . . The filing of this suit, Davies says, will have the effect of putting . . . (Independence's) financing of Independence Woods

on hold; Independence Woods will grind to a stop. The suit may take a year before it is heard in court. The Independence Woods issue has galvanized residents of Coventry Woods . . . CWNA membership is up 20 percent and we have received financial donations from members and friends. But litigation is expensive . . . The CWNA Board of Directors unanimously believes that stopping Independence Woods—once and for all—is the Number One priority of our organization . . . Your donation . . . will help stop this project once and for all . . ."

(Alteration in original.)

Based on these two findings of fact, in its Conclusion of Law No. 6, the trial court determined:

[T]here is substantial evidence, viewed from an objective perspective, that these actions were filed for an improper purpose. In this regard, the most damaging evidence is the page from the plaintiffs' neighborhood association newsletter and website entitled "CWNA Sues City Hall," quoted above under paragraph 3 of the findings of fact, stating the plaintiffs' lawsuits "will have the effect of putting . . . (Independence's) financing of Independence Woods on hold; Independence Woods will grind to a stop" and "[t]he suit may take a year before it is heard in court." *The court concludes that this evidence—which neither the plaintiffs nor their counsel denied or refuted in any way—is sufficient to create a strong inference that these actions were filed for an improper purpose,* specifically to harass Independence, make its Independence Woods development prohibitively expensive, interfere with or defeat its financing for that project, and to achieve through delay what could not be accomplished through those actions— the blocking or prevention of that development.

(Alteration in original.) (Emphasis added.)[1] Thus, in concluding there existed "substantial evidence . . . sufficient to create a strong infer-

1. We emphasize this language in the trial court's order because, although the trial court included such language in its Conclusions of Law, we find such language is actually a mixed finding of fact and conclusion of law. "Generally, 'any determination requiring the exercise of judgment . . . or the application of legal principles . . . is more properly classified as a conclusion of law.'" *Lamm v. Lamm,* —— N.C. App. ——, ——, 707 S.E.2d 658, 691 (2011) (quoting *In re Helms,* 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997)). Here, the trial court's determination that the language quoted from CWNA's newsletter was not "denied or refuted in any way" by "neither the plaintiffs nor their counsel" is a finding of fact regarding the evidence before the trial court, rather than a conclusion of law requiring the exercise of judgment or the application of legal principles. "Mislabeling of a finding of fact as a conclusion of law is inconse-

ence that [appellants'] actions were filed for an improper purpose," it appears the trial court relied on its findings that appellants filed their actions many months after Independence Woods had been preliminarily approved by planning staff, that CWNA published in its newsletter the fact that litigation would delay the financing and development of Independence Woods, and that appellants did not deny or refute the statements concerning project delay published in CWNA's newsletter.

However, applying the aforementioned principles of Rule 11 to the present case, we find the trial court's Conclusion of Law No. 6, which is actually a mixed conclusion of law and finding of fact, is erroneous. First, the trial court's determination that the "most damaging evidence" quoted by the trial court from CWNA's newsletter was "neither . . . denied [n]or refuted in any way" by appellants is unsupported by the evidence in the record and is therefore an erroneous finding of fact. Despite the language quoted by the trial court in its Finding of Fact No. 3, the CWNA newsletter principally relied on by the trial court as evidence of improper purpose contains language negating any inferences that appellants commenced their actions for the principal purposes of harassment and unnecessary project delay. The CWNA newsletter discusses the issue prompting the litigation regarding Independence Woods, describing the planning staff's approval of Independence Woods as "a de facto rezoning." The record shows that prior to the planning staff's preliminary approval of the Independence Woods subdivision plan, which includes a "density bonus," Independence first sought to have its property rezoned to allow for the increased density. CWNA publicly opposed the rezoning application, and the Charlotte City Council voted not to rezone the property. Regarding its concerns with the planning staff's preliminary approval of the Independence Woods subdivision, the CWNA newsletter states:

> City ordinances allow for a 10-day window in which subdivision approvals can be appealed. But no notice had been given us. More important for our case: There was no public record of this approval on the city's charmeck.org Web site until several weeks after the 10-day window had come and gone. Our suit says this is a clear-cut, Catch-22 violation of the law.

quential if the remaining findings of fact support the conclusion of law." *Id.* However, the trial court's determination that the evidence is sufficient to create a strong inference that appellants filed their three actions for an improper purpose requires the exercise of judgment or the application of legal principles, and therefore is properly labeled a conclusion of law.

Further, the newsletter concludes by stating, "A successful lawsuit will benefit all neighborhoods. When our suit is won, we all will have won." These statements negate any inference that appellants' principal purpose in filing their actions was an improper one.

Also before the trial court was the affidavit of CWNA president John Bordsen ("Bordsen"). In his affidavit, Bordsen stated that appellants' purpose in filing the lawsuits "was to attempt to re-open the subdivision approval process so [plaintiffs/petitioner(s)] could be heard on the merits of [their] objections." Bordsen continues, "We believe that our objections, if given due consideration by the Planning Commission, would result in the disapproval of the Independence Woods preliminary subdivision plan." Bordsen admits that appellants "did anticipate that filing [plaintiffs/petitioner(s)'] lawsuits would potentially put development on hold during the course of the lawsuit," but clarifies that appellants "hope[d] to avoid a *fait accompli* wherein [appellants] would later win the case, but the subdivision would be built anyway." Bordsen further states that appellants "discussed this matter with County Commissioner Dumont Clark and current Mayor Anthony Foxx, both attorneys. Based upon [appellants'] conversations with Dumont Clark, Anthony Foxx, and [appellants'] counsel, Kenneth T. Davies, [appellants] felt comfortable proceeding with [appellants'] cases."

Further, in his deposition, Bordsen clarified that Davies had told appellants that the act of filing a lawsuit ordinarily has the effect of delaying a construction project. Bordsen also clarified that, while the newsletter stated that it may take a year before their lawsuit was heard in court, appellants "hoped it would happen beforehand." Thus, the trial court was presented with ample evidence refuting any implication of improper purpose from the statements quoted in Finding of Fact No. 3. As such, the trial court's finding of fact that appellants did not deny or refute the statements concerning project delay published in CWNA's newsletter is erroneous and, therefore, cannot support its conclusion that such evidence was sufficient to create a strong inference that appellants filed their actions for an improper purpose.

In addition, it appears from the order imposing sanctions that the trial court was clearly focused on the language concerning project delay in CWNA's newsletter. The language quoted by the trial court in its Finding of Fact No. 3 is principally relied on by the trial court as "the most damaging evidence" tending to show that appellants filed their three actions for the improper purposes of delay and harassment. Independence also primarily relies on that same language from

CWNA's newsletter to carry its burden of showing that appellants filed their three actions for an improper purpose. However, as the language quoted by the trial court accurately reflects, an inherent byproduct to every valid lawsuit of such a nature as the present case is project delay. The statements highlighted by the trial court in the CWNA newsletter reflect this inevitable reality, as explained by Bordsen in both his affidavit and his deposition. In light of the trial court's conclusion that appellants' actions "could have been warranted by a 'good faith argument for the extension, modification or renewal of existing law,' " we fail to see how construction and financing delay under the circumstances of the present case is so exceptional such as to create a strong inference that this was appellants' principal purpose in filing its actions. *Kunstler*, 914 F.2d at 518. Thus, we find the trial court's Finding of Fact No. 3, encompassing such language, does not support the trial court's conclusion that such evidence is sufficient to create a strong inference that appellants filed their actions for an improper purpose. Accordingly, the trial court's findings are insufficient to support its conclusion that appellants filed their three actions for improper purposes.

Furthermore, in reviewing the evidence in the record, under the totality of the circumstances of this case, we find no evidence to support an award of sanctions on the bases asserted by Independence. Besides the statements from CWNA's newsletter, the only other evidence offered by Independence to support its argument that appellants' principal purpose in filing their three actions was an improper one was appellants' continued prosecution of their three actions. Independence appears to argue that in light of unfavorable responses from the Commission's planning staff and the trial court and the defenses raised by Independence in its answers to appellants' actions, appellants "should have, and must have, realized that their suit was meritless."

Although Independence repeatedly refers to appellants' actions as "frivolous," the trial court found that appellants' complaint for declaratory judgment and two petitions for review in the nature of *certiorari* "could have been warranted by a 'good faith argument for the extension, modification or renewal of existing law.' " Indeed, because the provisions of the Subdivision Ordinance foreclosed appellants' participation in the planning staff's approval of the Independence Woods subdivision plan, appellants' only redress was to turn to the courts to argue, in good faith, for the modification of the existing law. The record evidence shows that plaintiffs/peti-

tioner(s) have a history of actively participating in administrative land use decisions affecting areas surrounding their neighborhoods. As such, the trial court "resolved the first two prongs of the rule in favor of the plaintiffs and their counsel." While Independence is correct in its assertion that "failure to dismiss or further prosecution of the action may result in sanctions . . . under the improper purpose prong of [Rule 11]," *Bryson*, 330 N.C. at 658, 412 S.E.2d at 334, this Court has clarified that " '[c]ase law clearly supports the fact that just because a plaintiff is eventually unsuccessful in her claim, does not mean the claim was inappropriate or unreasonable.' " *Adams*, 167 N.C. App. at 403, 606 S.E.2d at 155 (alteration in original) (quoting *Harris*, 149 N.C. App. at 937, 563 S.E.2d at 229). Independence has offered no evidence showing how appellants' continued prosecution of their claims was not for the central and sincere purpose of putting their legal arguments to the proper test, especially in light of the trial court's conclusion that appellants' three actions could have been warranted by a good faith argument for the modification of existing law.

Moreover, for purposes of Rule 11, Independence's "subjective belief" that appellants filed their actions for the purpose of harassment, "as well as whether the offending conduct did, in fact, harass [Independence] is immaterial to the issue of whether [appellants'] conduct is sanctionable." *Ward v. Jett Properties, LLC*, 191 N.C. App. 605, 609, 663 S.E.2d 862, 865 (2008); *see also Kohler*, 177 N.C. App. at 404-05, 628 S.E.2d at 824; *Kunstler*, 914 F.2d at 520 (holding that "a subjective hope by a plaintiff that a lawsuit will embarrass or upset a defendant" is not grounds for a Rule 11 sanction, "so long as there is evidence that a plaintiff's central purpose in filing a complaint was to vindicate rights through the judicial process"). Therefore, based on the evidence in the record, when viewed objectively under the totality of the circumstances of the present case, we find appellants' continued prosecution of its actions and the language concerning project delay in CWNA's newsletter insufficient to create a strong inference that appellants' principal purpose in filing their three actions was to harass Independence or to cause unnecessary delay and disruption to the Independence Woods development.

Accordingly, because our review of the record reveals no evidence to support an award of sanctions on the bases asserted by Independence, remand is not necessary in this case. *Blyth v. McCrary*, 184 N.C. App. 654, 664, 646 S.E.2d 813, 820 (2007). Consequently, because we find the trial court's findings of fact are erroneous in part and do not support its conclusion to impose sanc-

tions on appellants for filing their actions for improper purposes, the order of the trial court imposing sanctions on appellants based on the improper purpose prong of Rule 11 must be reversed. Because we reverse the trial court's order imposing sanctions on this basis, we need not address appellants' remaining arguments.

### IV. Conclusion

The trial court's finding of fact that appellants did not deny or refute the statements concerning project delay published in CWNA's newsletter is not supported by the evidence in the record. In addition, the trial court's conclusion of law that there existed substantial evidence sufficient to create a strong inference of improper purpose relies on an erroneous finding of fact and is likewise unsupported by the remaining findings of fact, specifically the language quoted from CWNA's newsletter. To the contrary, when viewed objectively under the totality of the circumstances, we find the evidence in the record is insufficient to support the imposition of sanctions against appellants under the improper purpose prong of Rule 11. We therefore reverse the order of the trial court.

Reversed.

Judges HUNTER (Robert C.) and BRYANT concur.