NC Bioremediation, LLC v. Sea Winds, LLC, 2015 NCBC 94.

STATE OF NORTH CAROLINA

COUNTY OF DARE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 107

NC BIOREMEDIATION, LLC, )
                Plaintiff, )
 )
          v. )
 )
SEA WINDS, LLC; SEA WINDS 2, LLC; )
SEA WINDS 3, LLC; SEA WINDS 4, LLC; )
SEA WINDS 5, LLC; SEA WINDS 6, LLC; )
SEA WINDS 7, LLC; SEA WINDS 8, LLC; )
RANDY M. SAUNDERS; FREDERICK D. )
SUTER; RACHEL N. POWELL, and )
MARGRET P. BLAKELY, )
              Defendants. )

**ORDER ON MOTION FOR
RULE 11 SANCTIONS**

THIS MATTER comes before the Court on Defendants Sea Winds, LLC; Sea Winds 2, LLC; Sea Winds 3, LLC; Sea Winds 4, LLC; Sea Winds 5, LLC; Sea Winds 6, LLC; Sea Winds 7, LLC; Sea Winds 8, LLC; Randy M. Saunders; Frederick D. Suter; Rachel N. Powell; and Margret P. Blakely's ("Defendants") Motion for Rule 11 Sanctions ("Motion for Sanctions"). On August 7, 2015, the Court held a hearing on the Motion for Sanctions.

THE COURT, having considered the Motion for Sanctions, briefs in support of and opposition to the Motion for Sanctions, the arguments of counsel, and other appropriate matters of record, FINDS and CONCLUDES, solely for the purpose of deciding the Motion for Sanctions, as follows.

**PROCEDURAL BACKGROUND**

1.     On February 25, 2015, Plaintiff filed its Complaint in this matter on behalf of NC Bioremediation, LLC "by and through its Member-Manager John A. Mauney."[1] The Complaint asserts claims for Accounting of Profits, Civil Conspiracy, Money Owed, Breach of Fiduciary Duty, Conversion, Constructive Fraud, and Unfair and Deceptive Trade Practices

---

[1] Compl., introductory paragraph.

in violation of N.C. Gen. Stat. § 75-1.1 (hereinafter, references to the General Statutes will be to "G.S."). The Complaint was signed by attorneys Brice M. Bratcher ("Bratcher") and J. Denton Adams ("Adams"), and is verified by John A. Mauney ("Mauney") as "corporate manager of NC Bioremediation, LLC."

2.     In the Complaint, Plaintiff alleges that it entered into a business relationship with Defendants Randy M. Saunders ("Saunders"), Frederick D. Suter ("Suter"), Rachel N. Powell ("Powell"), and Margret P. Blakely ("Blakely") (collectively, "Individual Defendants") to purchase a hotel and timeshare in Dare County, North Carolina. This business venture was incorporated as Sea Winds, LLC ("Sea Winds"), with Plaintiff, Saunders, Suter, Powell and Blakely each holding membership interests in the LLC. In the course of its operation, Sea Winds acquired title to additional lots in Dare County. These lots were transferred to the numbered Sea Winds entities named in this action.[2] Plaintiff alleges that a number of these properties were sold and that Sea Winds received proceeds in excess of $7,000,000.00 from these sales. Sea Winds has made distributions to Saunders, Suter, Powell, and Blakely, on account of their membership interest in Sea Winds, but has made no distribution to Plaintiff. In this action, Plaintiff seeks to recover the distributions it contends were improperly withheld by Sea Winds and additional damages arising out of the conduct of Defendants.

3.     On June 10, 2015, Defendants filed the Motion for Sanctions pursuant to Rule 11 of the North Carolina Rules of Civil Procedure ("Rule(s)"). In the Motion for Sanctions, Defendants contend that:

> John A. Mauney, by representing himself to be corporate manager and a member of Plaintiff NC Bio, is engaging in a fraud upon the Court, and by seeking monetary compensation to which he is not entitled, is the true party-in-interest as to this Complaint and is aware that the allegations contained therein are not well grounded in fact, that claims are not warranted by law, and has engaged counsel to file the complaint herein for the improper purpose

---

[2] The Complaint does not allege whether each of the members of Sea Winds were also members of the numbered Sea Winds entities.

of harassing the Defendants and subjecting them to the costs of litigation in an effort to obtain funds to which he has no rightful claim.[3]

Defendants also contend that Bratcher and Adams "should be sanctioned . . . for failing to take the minimal steps necessary to confirm the factual representations of John A. Mauney before signing off on the complaint after receiving actual notice that those representations were false."[4] Defendants seek dismissal of the lawsuit and an order requiring Mauney and Plaintiff's counsel, Bratcher and Adams, to pay Defendants' reasonable attorneys' fees.

FACTS

4. In support of and opposition to the Motion for Sanctions, the parties have submitted a number of affidavits and other evidence. The record evidence tends to show the following facts.[5]

5. Mauney alleges that in March of 2001, he and James L. Overton ("Overton") "agreed to form NC Bioremediation."[6] NC Bioremediation, LLC's Articles of Incorporation were filed with the North Carolina Secretary of State ("Secretary of State") on March 19, 2001, and were signed by Mauney as "Organizer."[7] Several annual reports filed on behalf of NC Bioremediation, LLC from 2002 through 2009 list Mauney as the registered agent for the LLC, but list Overton as the sole member and manager.[8] None of the reports filed with the Secretary of State prior to early 2015 list Mauney as a member of NC Bioremediation, LLC.

6. Mauney was a licensed North Carolina attorney at the time that NC Bioremediation was formed.[9] Mauney claims that "Overton was identified as the member of

---

[3] Mot. Sanctions ¶ 10.
[4] *Id.* ¶ 22.
[5] The Court recites these facts for purposes of this Motion for Sanctions only.
[6] Mauney Aff. ¶ 3.
[7] Mot. Sanctions Ex. 5.
[8] *Id.* Ex. 6.
[9] On July 15, 2013, Mauney was disbarred by the North Carolina State Bar for a number of violations of the Rules of Professional Conduct. In the Order of Discipline, the Disciplinary Hearing Commission

NC Bioremediation, LLC because I was acting as the attorney for the Sea Winds entities in a transactional nature."[10] Mauney apparently wished to sidestep his ethical obligations under the Rules of Professional Conduct by representing the Sea Winds members while holding an undisclosed financial interest in NC Bioremediation.[11]   Nevertheless, Mauney alleges that he "held an option to exercise [an] ownership interest in NC Bioremediation."[12] Mauney contends that he exercised the option to acquire an ownership interest in NC Bioremediation "in writing to Mr. Overton in 2008."[13] Plaintiff's counsel admit that they do not have a copy of the alleged written exercise of this option, or any other documentary evidence stating that Mauney in fact owns a membership interest in NC Bioremediation. On February 28, 2013, Plaintiff was administratively dissolved by the Secretary of State for failing to file annual reports.

7.      On August 28, 2014, Bratcher sent a letter to Saunders stating that Bratcher had "been retained by NC Bioremediation" regarding the payments due to Plaintiff by Sea Winds for the sales of various properties.[14]  Defendants contend that Saunders replied to Bratcher's letter and advised him, *inter alia*, that it there was no proof Mauney had a membership interest in NC Bioremediation, that as an alleged 50% owner Mauney would not have authority to file a lawsuit on Plaintiff's behalf, that Overton had stated in emails that Mauney was not a 50% owner of NC Bioremediation, and that Mauney had acted as the

---

found that Mauney, on multiple occasions, "made demonstrably false statements under oath" at a deposition. *North Carolina State bar v. Mauney*, 12 DHC 36 (Jul. 15, 2013).
[10] Mauney Aff. ¶ 5.
[11] Pl's Br. Opp. Mot. Sanctions 2; North Carolina Revised Rules of Professional Conduct 1.7 and 1.8. RPC 1.8(a) prohibits an attorney from entering into a business transaction with a client or acquiring an "ownership, possessory, security or other pecuniary interest directly adverse to a client" unless the transaction are fair and reasonable, are fully disclosed to the client, the client has opportunity seek independent legal counsel, and the client provides informed consent.
[12] Mauney Aff. ¶ 6.
[13] *Id.*
[14] Mot. Sanctions Ex. 2.

attorney for Sea Winds.[15]  Bratcher, however, denies that he received Saunders' reply, and alleges that it was first provided to him at a hearing held before this Court on May 7, 2015.[16] Nevertheless, Bratcher admits that he spoke with Saunders by telephone on September 9, 2014, and that Saunders told him "that Mr. Overton had stated that Mauney was not an owner of NC Bioremediation."[17] In addition, both parties have submitted emails exchanged between Mauney, Overton, and Saunders from April and May of 2011, in which Overton states that Mauney never had a membership interest in NC Bioremediation.[18]  In addition, Plaintiff has filed several financial statements allegedly prepared by Overton and delivered to Mauney in 2006 and 2007 that Plaintiff claims show Mauney shared some type of ownership interest with Overton in Sea Winds.[19]

8.      In November 2014, Mauney purported to call a meeting of the members of NC Bioremediation.[20] Notice of the meeting was sent by first class and certified mail to Overton at an address in North Carolina, but the certified notice was returned unclaimed. Overton did not attend this meeting. On November 24, 2014, Mauney held the membership meeting and removed Overton as manager of NC Bioremediation and appointed himself manager.[21] On January 30, 2015, an application for reinstatement was filed with the North Carolina Department of the Secretary of State. This document listed Mauney as manager of NC Bioremediation. Until January 30, 2015, no annual report or other record on file with the North Carolina Secretary of State listed Mauney as a manager or member of Plaintiff.[22]

---

[15] *Id.* Ex. 3.
[16] Bratcher Aff. ¶ 9.
[17] *Id.* ¶ 10.
[18] Pl's Br. Opp. Mot. Sanctions, Ex. I; Mot. Sanctions Ex. 4.
[19] Pl's Br. Opp. Mot. Sanctions, Exs. A and C.
[20] At this time, Bratcher was representing NC Bioremediation, LLC and facilitated the November 2014 meeting. *See* Bratcher Aff. ¶¶ 15-17.
[21] *See* Br. Opp. Mot. Sanctions Ex. L.
[22] *See id.* The report filed January 30, 2015, also lists Bratcher as Registered Agent of Plaintiff.

9.	On February 25, 2015, Bratcher and Adams filed the Complaint containing their signatures. The Complaint was verified by Mauney.

10.	On May 7, 2015, Overton filed a sworn affidavit with the North Carolina Secretary of State contesting the validity of Mauney's reinstatement of NC Bioremediation. In the affidavit, Overton states that "John A. Mauney is not a member or manager of NC Bioremediation, LLC and was not authorized by any member or manager of NC Bioremediation, LLC to reinstate the LLC."[23] On June 3, 2015, Overton filed with the Secretary of State corrections to the Application for Reinstatement filed by Mauney, a new Application for Reinstatement signed by Overton, and two annual reports.

11.	On August 27, 2015, over two weeks after the hearing on the Motion for Sanctions, Plaintiff's counsel submitted an affidavit they obtained from Overton ("Overton Affidavit").[24] The Overton Affidavit contradicts Mauney's affidavit filed by Plaintiff's counsel on June 29, 2015. In the Overton Affidavit, Overton states that "[a]t the time of the creation of NC Bioremediation, I was the sole member and manager of NC Bioremediation" and that "I remain the manager of NC Bioremediation."[25] In addition, Overton "dispute[s] that Mr. Mauney ever exercised an option or had authority to act on behalf of NC Bioremediation"[26] and that Mauney lacked authority to hire Plaintiff's counsel, reinstate NC Bioremediation, LLC, or file this lawsuit.[27] Nevertheless, Overton, as manager of Plaintiff, claims to retroactively ratify the actions of Mauney.[28]

---

[23] Mot. Sanctions Ex. 7.

[24] This affidavit is dated and notarized as of August 26, 2015.

[25] Overton Aff. (Aug. 26, 2015) ¶ 3.

[26] *Id.* ¶ 4.

[27] *Id.* at ¶ 5.

[28] *Id.* Additionally, for good measure, Overton "unequivocally den[ied] any allegations that [he] embezzled money from Sea Winds, LLC or any defendants in this action." *Id.* at ¶ 10. As both parties recognize, Overton has been accused of embezzling approximately $500,000.00 from Sea Winds. *See* Pl.'s Br. Opp. Mot. Sanctions 1-2; Defs.' Ans. (asserting, as their first affirmative defense, an

ANALYSIS

12.     Rule 11 requires that an attorney and/or party sign every "pleading, motion, and other paper" and that:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

G.S. § 1A-1, Rule 11.

13.     "There are three parts to a Rule 11 analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose." *Peters v. Pennington*, 210 N.C. App. 1, 27 (2011) (internal citations omitted). Defendants contend that Plaintiff's counsel violated all three mandates of Rule 11.  When the factual sufficiency of a pleading or paper is challenged, "a court must determine (1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact." *Id.* (internal citations omitted). A two-prong analysis is also used to determine whether a complaint is well-grounded in law. "This approach looks first to the facial plausibility of the pleading and only then, if the pleading is implausible under existing law, to the issue of 'whether to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, the complaint was warranted by

---

entitlement to offset any potential amounts owed to Plaintiff by "those funds embezzled from Sea Winds, LLC by Overton").

existing law.' "*Polygenex Int'l, Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 249 (1999). Finally, in determining whether a complaint was filed for an improper purpose, the Court employs an objective standard and the movant bears the burden to prove an improper purpose. *Coventry Woods Neighborhood Ass'n v. City of Charlotte*, 213 N.C. App. 236, 241 (2011). An improper purpose is "any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." *Id.* (internal citations omitted). The Court looks to the totality of the circumstances to determine whether an improper purpose "may be inferred from the alleged offender's objective behavior." *Id.*

14.     As a preliminary matter, the filing of the Overton Affidavit and the purported ratification of Mauney's actions do not prevent the Court from addressing the Motion for Sanctions, nor do they cure any potential violation of Rule 11 associated with filing the Complaint. As North Carolina courts have long recognized, a party cannot avoid a Rule 11 inquiry by dismissing the claims or pleading at issue. *See, e.g., Bryson v. Sullivan*, 330 N.C. 644, 653 (1992) (recognizing that the trial court is not deprived of jurisdiction to consider a motion for sanctions by the filing of a voluntary dismissal). Similarly, any subsequent attempt to save Plaintiff's Complaint, or cure deficiencies in counsel's investigation of the Complaint, should not deprive this Court of the authority and responsibility to address potential Rule 11 violations. To hold otherwise would remove all incentive for a litigant "to 'stop, think, and investigate more carefully before serving and filing papers.'" *Id.* (internal citations omitted).

15.     Here, Defendants do not challenge (for purposes of this motion) the factual allegations in the Complaint regarding the formation of the Sea Winds entities, the purchases and sales of real estate by the those entities, and the failure to distribute proceeds from the sales to NC Bioremediation.  Additionally, the legal claims raised in the Complaint appear to at least arguably be facially plausible and warranted by existing law at this stage of the

proceeding. [29] Accordingly, the Court concludes that the Complaint is legally sufficient and does not violate Rule 11 on this basis. *See Polygenex Int'l, Inc.*, 133 N.C. App. at 239.

16. The facts currently before the Court, however, tend to show that Mauney was not a member of NC Bioremediation and was not authorized to take action on behalf of the LLC. Accordingly, the question for the Court is what inquiry into the facts did Plaintiff's counsel conduct prior to filing the Complaint and was that inquiry a reasonable one under the circumstances.

17. Prior to filing the Complaint, Plaintiff's counsel: gathered facts from Mauney; spoke to Mauney's former office assistant, Crystal Smith, who provided hearsay support for the notion that Mauney had an ownership interest in NC Bioremediation; obtained from Smith a document allegedly prepared by Overton that implies Mauney and Overton were both members of NC Bioremediation; spoke with various law enforcement officials regarding the investigation into Overton's alleged misappropriation of funds from NC Bioremediation, but these individuals clearly had no personal knowledge regarding Mauney's ownership in NC Bioremediation; reviewed "public filings," which only listed Overton as a manager or member of NC Bioremediation; obtained email exchanges between Overton, Saunders and Mauney in which Overton stated that Mauney was not a member of NC Bioremediation; and spoke to Saunders who, at least as of September, 2014, had taken the position that Mauney was not a member of NC Bioremediation. The facts establish that Plaintiff's counsel did not as part of their inquiry obtain any documentary evidence from Mauney to support his claim

---

[29] Defendants also argue that the Complaint lacks a sufficient legal basis because the Individual Defendants, as members of Sea Winds, bear no personal liability for any potential harm caused by Sea Winds. Given that the Complaint alleges that some or all of the Sea Winds entities were dissolved at some point, and because the principles of piercing the corporate veil have been applied in the LLC context, *see Deluca v. River Bluff Holdings II, LLC*, 2015 NCBC LEXIS 12, *29 (N.C. Super. Ct. Jan. 28, 2015), the Court concludes that, as to the naming of the Individual Defendants, Defendants' argument should be rejected at this stage.

that he held an option to become a member in NC Bioremediation or that he exercised such an option or contact, and they did not even attempt to contact Overton to obtain his position.

18. The Court is troubled by the contents of the Overton Affidavit, particularly given the failure to contact Overton prior to filing the Complaint. Plaintiff's counsel has now filed two separate sworn affidavits that contain contradictory factual claims. Significantly, the Overton affidavit completely undercuts the basis for Plaintiff's allegations at the time the Complaint was filed that Mauney was or is a member of NC Bioremediation and that Mauney had authority to initiate this action. Overton maintains that Mauney was not a member of NC Bioremediation at the time it was created, and that Overton "was the sole member and manager" of the company.[30] Overton contradicts Mauney's sworn affidavit stating that Mauney did not exercise an option to acquire ownership in, and never had authority to act on behalf of, NC Bioremediation.[31] Overton also states that despite Mauney's actions he "remain[s] the manager of NC Bioremediation."[32] The competing affidavits appear to create an irreconcilable conflict between Mauney and Overton regarding their respective rights in NC Bioremediation and in any recovery that might be obtained on behalf of Plaintiff.

19. Additionally, the Court is troubled by Plaintiff's counsel's attempt at the hearing to distance themselves from Mauney, and to sidestep the Court's inquiry into issues concerning Mauney's veracity. Plaintiff's counsel made statements indicating that they were not themselves convinced of Mauney's credibility, including the credibility of facts contained in Mauney's affidavit that Plaintiff's counsel filed with this Court. At the hearing, Plaintiff's counsel contended that NC Bioremediation, and not Mauney, was their client. While it is true that this action was brought in the name of NC Bioremediation, LLC, the fact remains:

---

[30] Overton Aff. ¶ 3.
[31] *Id.* ¶ 4. This testimony is consistent with Overton's position in other evidence in the record. *See* Pl.'s Memo. Opp. Mot. Sanctions, Ex. I. However, this position has now been taken by Overton under oath.
[32] *Id.*

Mauney provided Plaintiff's counsel with the background facts upon which they relied, directed the filing of the lawsuit on behalf of NC Bioremediation, and verified the Complaint.

20. While the evidence establishes that Plaintiff's counsel conducted some inquiry into the facts that Mauney provided regarding his membership in, and right to act on behalf of, NC Bioremediation prior to filing the Complaint, the numerous red flags discussed herein simply required further inquiry. Particularly striking is Plaintiff's counsel's failure to even attempt to contact Overton to inquire into the facts surrounding NC Bioremediation prior to filing the Complaint. Plaintiff's counsel's submission of the Overton Affidavit shortly after the hearing suggests the apparent ease with which this could have been done. Accordingly, the Court can only conclude that contacting Overton to get his position on Mauney's contended ownership, or his approval for filing this action, could have been accomplished relatively quickly and with little additional effort. Counsel has offered no explanation as to why the information in the Overton Affidavit could not have been discovered before the Complaint was filed. Accordingly, the Court concludes that, given the numerous red flags as discussed above, counsel's investigation into the factual background of the Complaint fell short of Rule 11's requirement that such an inquiry be reasonable under the circumstances.

21. Defendants also contend that Mauney and Plaintiff's counsel filed the Complaint for an improper purpose in violation of Rule 11. Given the facts discussed above, the Court has serious concerns regarding at least Mauney's purpose in pursuing this litigation. When considered objectively, however, the Court concludes that Defendants have failed to satisfy their burden of showing that Counsel filed the Complaint improper purpose. While Defendants have raised the issue of champerty in the Motion for Sanctions, they have not shown how the litigation finance arrangement in this case constitutes champerty. Similarly, Defendants have not shown, at this stage, that the Complaint was filed to harass Mauney's former clients or for a similar improper purpose.

22.     Nevertheless, under Rule 11, signing a pleading, motion, or other paper certifies that all three elements of Rule 11(a) are satisfied, and a "breach of the certification as to any one of these three prongs is a violation of the Rule." *Bryson*, 330 N.C. at 655. Because the Court has determined that Plaintiff's counsel did not undertake a reasonable inquiry into the facts underlying Mauney's membership in and authority to act on behalf of NC Bioremediation, the Court concludes that the Motion for Sanctions should be GRANTED.

23.     Having concluded that the Motion for Sanctions should be granted, the Court now turns to the appropriate sanction to be imposed for violation of Rule 11. As North Carolina appellate courts have made clear, once it is determined that a paper violates Rule 11, the specific sanction imposed for that violation is left to the discretion of the trial court. *See, e.g., Melton v. Stamm*, 138 N.C. App. 314, 316 (2000).

24.     After thoroughly considering the Motion for Sanctions, the record evidence filed by the parties, and other appropriate matters of record, the Court concludes, in its discretion, that dismissal of Plaintiff's action is the most appropriate sanction in this matter. Having caused Defendants to litigate this matter for six months before ensuring counsel had authority to represent Plaintiff, counsel have now indicated that they intend to seek leave to amend the Complaint "to clarify its contents." The basis for Plaintiff's desired amendment appears to be counsel's reliance on the facts contained in the Overton Affidavit, which completely contradict a number of allegations in the Complaint and representations of counsel that Mauney is a member and manager of Plaintiff. Such a dramatic reversal is troubling, will only serve to unnecessarily prolong this litigation, and will subject Defendants to further expense.[33]   The Court sees no possible justification for allowing Plaintiff to keep

---

[33] The Court notes that the Rule 11 violation at issue not only gave rise to the Motion for Sanctions, but the same factual concerns – Mauney's authority to cause NC Bioremediation, LLC to initiate this action – underlie Defendants' Motion for Summary Judgment, currently pending before the Court.

Defendants engaged in this litigation while counsel continues to undertake the investigation they should have made before filing the Complaint.

25. Defendants also have moved the Court for an order requiring Plaintiff's counsel and Mauney to pay their reasonable attorneys' fees incurred in pursuing this motion. *Bryson*, 330 N.C. at 656 (recognizing that both counsel and a represented party are subject to sanctions under Rule 11). As discussed above, Plaintiff's counsel did conduct an inquiry into Mauney's authority, albeit one that fell short of being reasonable. In addition, it does appear that NC Bioremediation may have a valid claim to some portion of the proceeds from the sale of the Sea Winds properties. Finally, the facts do not demonstrate that Plaintiff's counsel filed this action for an improper purpose. Accordingly, for the foregoing reasons the Court concludes, in its discretion, that Defendants' request for attorneys' fees should be DENIED.

THEREFORE, IT IS ORDERED that:

26. Defendants' Motion for Sanctions is GRANTED.

27. This action is DISMISSED, WITHOUT PREJUDICE.

28. Defendants' request for attorneys' fees is DENIED.

This the 15th day of October, 2015.

        /s/ Gregory P. McGuire
        Gregory P. McGuire
        Special Superior Court Judge
          for Complex Business Cases